IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10083
_____


HARUN NASSOR TALIB,

Plaintiff-Appellant,

versus

GILLEY, Sgt.; LESLIE WOODS, Warden;
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE - INSTITUTIONAL DIVISION,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

April 15, 1998

Before GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Harum Nassor Talib is a former Texas state prisoner. He
appeals the dismissal of his section 1983 civil rights claim as
frivolous. Talib argues that the defendants subjected him to cruel
and unusual punishment in violation of his Eighth Amendment rights
by withholding his meals on approximately fifty occasions over a
five-month span while he was confined to his cell during lockdown
periods as a result of gang-related violence. Sergeant Gilley, a
female prison guard, would not serve Talib these meals in his cell
when he refused to kneel down with his hands behind his back before
being served--a measure to assure the guard's safety. Talib

alleges that, as a result of missing these meals, he lost fifteen pounds. He sued Sergeant Gilley, Warden Leslie Woods, and the Texas Department of Criminal Justice - Institutional Division ("TDCJ-ID") under 42 U.S.C. § 1983, seeking $1.25 million in compensatory damages. The district court determined that Sergeant Gilley's instructions were consistent with prison regulations that, in turn, were reasonably related to a legitimate penological interest. The district court accordingly dismissed Talib's complaint as frivolous. We affirm.

I

Talib obtained permission from the district court to proceed *in forma pauperis* ("IFP").[1] The case was assigned to a magistrate judge to conduct a <u>Spears</u> inquiry into the facts underlying Talib's complaint. See <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985). The magistrate judge issued Talib a questionnaire to clarify the basis of Talib's claim. On the questionnaire, Talib stated that his diet on lockdown was inadequate because some meals were withheld and because the sandwiches he was served contained "Vita-Pro" (a soy-based food supplement used occasionally as a meat substitute in Texas prisons), which he refused to eat.[2] Talib

---

[1]Talib argues that he was not proceeding IFP because he paid the full filing fee. The record, however, reveals that, although he paid the full fee on appeal, he did not do so in the action below.

[2]Although it is highly doubtful that Talib raised any arguable, non-frivolous issues regarding Vita-Pro, the claim has in any event been abandoned on this appeal. See <u>Yohey v. Collins</u>, 985

2

further conceded that the non-Vita-Pro meals he received were nutritionally and calorically adequate. The magistrate judge found that Talib failed to allege facts showing that his diet was nutritionally or calorically deficient and concluded that the regulation requiring prisoners to kneel facing the wall with their hands behind their backs before feeding was reasonably related to a legitimate penological interest. He thus recommended dismissing the complaint as frivolous under 28 U.S.C. § 1915. After an independent review of the record, the district court adopted the magistrate judge's report.

                                II

An IFP complaint may be dismissed as frivolous if it lacks an arguable basis in law or fact. See 28 U.S.C. § 1915(e)(2)(B)(i); Eason v. Thaler, 14 F.3d 8, 9 (5th Cir. 1994). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. See Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). This Court reviews dismissals as frivolous for an abuse of discretion. Id.

---

F.2d 222, 224-25 (5th Cir. 1993). Thus, we need not examine whether the district court abused its discretion in dismissing Talib's Vita-Pro claims.

To aid in the determination of whether an IFP complaint is frivolous, this court has approved the use of questionnaires or an evidentiary hearing. See Spears, 766 F.2d at 181-82. Responses to such an inquiry become part of the plaintiff's pleadings. See Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). "This inquiry perforce involves focusing precisely on a prisoner's factual allegations, puncturing the conclusion balloon in which they may at first be lodged." Spears, 766 F.2d at 181. We must therefore consider Talib's responses to the Spears inquiry in evaluating his claim under section 1915.

                              III

As a preliminary matter, we may quickly dispose of Talib's claims against TDCJ-ID. As an instrumentality of the state, the TDCJ-ID is immune from a suit for money damages under the Eleventh Amendment. See Harris v. Angelina County, Texas, 31 F.3d 331, 337-38 n.7 (5th Cir. 1994). Therefore, Talib's claims against the TDCJ-ID are barred by the Eleventh Amendment. The district court did not abuse its discretion in dismissing Talib's claims against the TDCJ-ID. We thus turn to the merits of Talib's Eighth Amendment claim.

                              IV

                              A

We begin by recognizing that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). These

4

protections specifically include the Eighth Amendment's prohibition against cruel and unusual punishment.  See Whitley v. Albers, 475 U.S. 312, 318 (1986).  Punishment rises to the level of cruel and unusual only if it involves an "'unnecessary and wanton infliction of pain.'"  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  No static test exists that measures whether conditions of confinement are cruel and unusual, for the Eighth Amendment draws its meaning from the "evolving standards of decency that mark the progress of a maturing society."  Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quotations omitted).[3]

---

[3]We assume, but not without some hesitation, that Talib has alleged a harm cognizable under the Eighth Amendment.  The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "'minimal civilized measure of life's necessities.'"  See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at 347).  Whether the deprivation of food falls below this threshhold depends on the amount and duration of the deprivation.  Talib alleges that he missed about fifty meals in five months and lost about fifteen pounds.  Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period.  We are therefore doubtful that Talib was denied anything close to a minimal measure of life's necessities.

Our decision in Cooper v. Sheriff, Lubbock County, Texas, 929 F.2d 1078 (1991), requires no less.  There, Cooper, a prisoner, alleged that prison officials refused to feed him any food for twelve consecutive days.  Given the clearly substantial nature of this deprivation, the court held that "Cooper's assertion that he was *continuously* deprived of food presents a set of facts that may entitle him to relief."  Id. at 1083 (emphasis added).  Talib, on the other hand, has not alleged a continuous and substantial denial of food, nor does the record support such an inference.  Thus, the unique circumstances controlling the Cooper case--the complete deprivation of food over an extended period of time--are simply not present in this case.

At the same time, however, "[t]he legitimacy, and the necessity, of considering the State's interests in prison safety and security are well established." Washington v. Harper, 494 U.S. 210, 223 (1990). Experience has shown that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Procunier v. Martinez, 416 U.S. 396, 405 (1974). "Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody." Id. at 404. In recognition of these interests, courts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

B

The prison regulation at issue here requires prisoners being served meals in their cells while on lockdown status to face the wall and get on their knees with their hands behind their backs. The district court concluded that the regulation was reasonably related to legitimate penological interests. We agree. Talib and other prisoners placed on lockdown typically include the most dangerous and violent prisoners in the prison system. See, e.g., Lewis v. Casey, 116 S.Ct. 2174, 2185 (1996). Indeed, the record

6

suggests that Talib and other prisoners were on lockdown because of gang-related violence.

Whether getting down and sliding the meals under a closed door, or setting them in the cell through an open door, prison officials have a legitimate penological interest in having these prisoners assume a non-threatening position. In either case, prison officials could be vulnerable to assault by prisoners incited by extended confinement during lockdown. General security and the safety of prison officials is, of course, a legitimate if not elementary penological interest. Washington, 494 U.S. at 225 ("There are few cases in which the State's interest in combating the danger posed by a person to himself and others is greater than in a prison environment, which, 'by definition,' is made up of persons with 'a demonstrated proclivity for antisocial criminal, and often violent, conduct.'"). We will not hamper the ability of prison officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration" by subjecting the day-to-day judgments of prison officials to intrusive second-guessing. See Turner, 482 U.S. at 89. Sergeant Gilley, a female prison guard responsible for serving meals to prisoners on lockdown, was justified in requiring Talib to kneel with his hands behind his back before serving him his meal.[4]

---

[4]Of course, prison officials are not required to adopt the policy "least restrictive" of prisoners' rights, so long as the policy adopted is itself reasonable. See Turner, 482 U.S. at 90. In this regard, Cooper v. Sheriff, Lubbock County, Texas, 929

C

Talib argues that no such policy exists because the prison has not provided him with any written regulation requiring prisoners to assume the kneeled position for feeding. Talib's argument has no merit inasmuch as the validity of prison policies is not dependent on whether they are written or verbal. A policy is a policy--the question is simply whether the record supports a finding that a policy exists. Here, the record contains many grievances filed by Talib complaining about his meals being withheld. Nearly every

---

F.2d 1078 (5th Cir. 1991), is again inapposite. It involved a prison regulation requiring inmates to be "fully dressed" before their meals could be served. See id. at 1082. Inmate Cooper was denied food when he refused to comply with the prison policy and sued prison officials alleging a violation of the Eighth Amendment. The district court dismissed the complaint for failure to state a claim. It found that Cooper's deprivation of needed food was not the intention of prison officials, but a result of his "voluntary" rejection of those meals. See id. Rejecting this position, we held that the validity of an Eighth Amendment claim did not depend on whether prison officials specifically intended the alleged harm. See id. at 1083; accord Farmer v. Brennen, 114 S.Ct. 1970, 1981 (1994) (establishing deliberate indifference standard). Thus, the Cooper case merely reaffirmed the "traditional eighth amendment standard" that "unnecessary and wanton" infliction of punishment is enough to state a claim. Cooper, 929 F.2d at 1083. Because the district court failed to consider "whether the [prison] officials acted within the scope of the regulation and whether the regulation was valid," and no evidence of the regulation appeared in the record, we concluded that "summary dismissal of Cooper's claim was premature." Id. at 1084. Cooper never addressed (indeed, it refused to address) whether the regulation in question was reasonably related to a legitimate penological interest, but obviously expected the district court to consider the matter on remand. Had the district court done so in the first place, the result in Cooper may well have been different. Here, by contrast, Talib challenges a prison policy that is, on its face, reasonably related to a legitimate penological interest. Cooper, therefore, has no application to this case.

8

grievance, representing complaints made throughout the five-month period in question, contains a typed response, signed by the warden or her authorized agent, affirming the existence of the prison policy. The warden's responses further explained that the policy was enacted pursuant to TDCJ-ID Administrative Directive 3.31 (March 7, 1991), which is also part of the record and gives the warden discretion to establish meal restrictions during lockdowns. The grievance responses and AD 3.31 are sufficient evidence of a valid policy.

Finally, even if the policy were not clearly established, such a requirment is unnecessary in this case. Whether dealing with the actions of an individual prison official or a regulation with prison-wide applicability, we employ the same standard to determine whether a prisoner's constitutional rights have been violated. See Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989). Thus, for the same reasons that we believe a policy requiring prisoners on lockdown to kneel facing the wall with their hands behind their backs when served meals is reasonably related to a legitimate penological interest, the action of an individual guard requiring such conduct is likewise constitutionally permissible.

V

Courts repeatedly remind prisoners that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions. See Rhodes, 452 U.S. at 349. We do so again today. Given the ease with which Talib could have complied with reasonable

9

prison regulations, he in a very real sense "carrie[d] the keys" to the kitchen cupboard. See Uphaus v. Wyman, 360 U.S. 72, 81 (1959). He chose not to unlock it, and it is not for the federal courts to intervene in his personal decision. For the reasons stated above, the judgment of the district court is

A F F I R M E D.