Bobby Franklin SIMMONS; Ricky Lynn Marshall, Plaintiffs—Appellees,

v.

Eddie COOK, Assistant Warden, Diagnostic Unit, Arkansas Department of Correction; Steven R. O'Neal, Lt., Diagnostic Unit, Arkansas Department of Correction, Defendants—Appellants,

David Foote, CO–1, Diagnostic Unit, Arkansas Department of Correction; Floyd Harper, CO–1, Diagnostic Unit, Arkansas Department of Correction; Steven Burgess, RN, Diagnostic Unit, Arkansas Department of Correction, originally sued as Steven Burges; Theresa Simonson, LPN, Diagnostic Unit, Arkansas Department of Correction, originally sued as Tracy Simonson, Defendants.

No. 97–2324.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1997.

Decided Sept. 1, 1998.

David B. Eberhard, Little Rock, Arkansas, argued, for Defendants–Appellants.

J. Fred Hart, Jr., Little Rock, Arkansas, argued, for Plaintiffs–Appellees.

Before WOLLMAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Bobby Franklin Simmons and Ricky Lee Marshall, two paraplegic inmates, bring this action pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment. Simmons and Marshall sued Eddie Cook, Assistant Warden of the Arkansas Department of Correction's Diagnostic Unit (the "DOC"), and Steven R. O'Neal, Lieutenant of the DOC,[1] after Simmons and Marshall (1) were placed in solitary confinement for thirty-two hours; (2) were denied their "egg crate" mattresses;[2] (3) missed four consecutive meals because their wheelchairs could not maneuver around the cell bunk to reach the barred door where the food tray was placed; and (4) were unable to eliminate their bodily wastes. After a bench trial, the district court[3] entered judgment against Cook and O'Neal and awarded Simmons and Marshall two thousand dollars ($2,000) each. Cook and O'Neal appeal, and we affirm.

## I. BACKGROUND

The facts, viewed most favorably to Simmons and Marshall as they must be, *see* *Williams v. Norris,* 148 F.3d 983, 984–85 (8th Cir.1998), are as follows. Simmons and Marshall were inmates in the DOC's general population. On the evening of October 18, 1994, Lieutenant Randy O'Neal was the shift supervisor. At approximately 12:30 a.m. on October 19, 1994, O'Neal smelled alcohol on Simmons and Marshall, and a Blood Alcohol Content ("BAC") Datamaster Test measured Simmons's blood alcohol content at .082 and Marshall's at .077. Because the inmates had consumed alcohol, O'Neal intended to follow prison policy by segregating Simmons and Marshall in the Diagnostic Unit's maximum security area.

Before placing the inmates into maximum security, O'Neal consulted with medical personnel to ensure that no medical reason prohibited the inmates' confinement because both inmates were disabled in the lower half of their bodies and wheelchair-bound. Two nurses, Theresa Simonson and Steve Burgess, inspected the confines of the maximum security area[4] and determined that both inmates could be adequately housed therein.

---

**1.** Simmons and Marshall also sued DOC correction officers David Foote and Floyd Harper as well as DOC nurses Steven Burgess and Theresa Simonson. After a bench trial, the district court dismissed the Complaint against these defendants. Simmons and Marshall did not appeal this dismissal.

**2.** Simmons and Marshall claim that egg crate mattresses are medically necessary for the sores resulting from their injuries. These mattresses have cone-shaped spikes of foam rubber which help to relieve pressure from the back, sides, and buttocks.

**3.** The HONORABLE JOHN FORSTER, United States Magistrate Judge for the Eastern District of Arkansas.

**4.** A maximum security cell houses one person and is approximately four by eight feet in area. The inside of the cell contains a plywood bunk which is covered by a hard, vinyl, three-inch-thick pad. The cell also has a toilet without a seat or any handrails or other handicapped-assistive devices.

However, Simonson specifically qualified her approval of the cells by advising O'Neal that the cells were only suitable provided that Simmons and Marshall could gain access to the hospital for treatments, had their egg crate mattresses, and had all their other medical requirements met. *See* Tr. at 440–444.

O'Neal consulted with Assistant Warden Eddie Cook by telephone, and Cook directed O'Neal to segregate Simmons and Marshall in the maximum security cells. Simmons and Marshall were placed in the cells at approximately 2:00 a.m. on October 19, 1994. Simmons's and Marshall's wheelchairs would not fit through the cell doors; therefore, they were lifted into the beds, and their wheelchairs were folded to fit through the cell doors, then reopened when placed in the cell.

During their stay in the maximum security cells, prison officials denied Simmons and Marshall their egg crate mattresses. In addition, Simmons and Marshall were unable to eat and missed four consecutive meals because their wheelchairs could not pass the cell bunk to reach the barred door where the food trays were set. Both Simmons and Marshall informed a correction officer that they could not reach the food trays. However, the officer replied that "[i]f you get hungry enough you'll find a way." Tr. at 279; *see also* Tr. at 187. Simmons and Marshall also were unable to have a bowel movement because they were denied the necessary medical supplies, appropriate access to a handicapped-assistive toilet, and all other necessary assistance in using the toilet. Cook returned to work the next day but never checked on either Simmons's or Marshall's welfare.

On November 18, 1994, Simmons and Marshall filed a Complaint, pursuant to 42 U.S.C. § 1983, against certain members of the security and medical staff at the DOC, alleging that these actions violated their Eighth Amendment right to be free from cruel and unusual punishment. On March 26, 1997, the district court issued an Order, finding in favor of Simmons and Marshall with respect to defendants Cook and O'Neal. However, Simmons's and Marshall's claims against the remaining defendants were dismissed. The

district court then awarded Simmons and Marshall $2000 each in compensatory damages. Cook and O'Neal appeal.

## II. DISCUSSION

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *See Long v. Nix*, 86 F.3d 761, 764 (8th Cir.1996). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.*

To prevail on an Eighth Amendment claim, an inmate must prove both an objective and a subjective element. First, the alleged deprivation, objectively, must be "sufficiently serious"; the prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities"; or the prison official must incarcerate the inmate under conditions "posing a substantial risk of serious harm." *Id.* at 834, 114 S.Ct. 1970 (internal quotation and citation omitted). Second, the prison official, subjectively, must act with "deliberate indifference" to inmate health or safety. *Id.* (internal quotation and citation omitted).

> While it is true that constructive knowledge, or the "should-have-known" standard, is not sufficient to support a finding of deliberate indifference, it does not follow that the required element of subjective knowledge cannot be proved by evidence of surrounding circumstances. The question whether the official knew of the risk is subject to demonstration, like any other question of fact, by inference from circumstantial evidence. Therefore, if a[n inmate] presents evidence of "very obvious and blatant circumstances" indicating that the [prison official] knew the risk existed, [then, it is proper to infer] that the official must have known.

*Spruce v. Sargent*, 149 F.3d 783, 785–86 (8th Cir.1998) (internal citations omitted). "A medical need is serious if it is obvious to the layperson or supported by medical evidence."

*Moore v. Jackson,* 123 F.3d 1082, 1086 (8th Cir.1997) (per curiam) (internal quotation and citation omitted).

■ For reversal, Cook and O'Neal first argue that the district court erred in finding that they violated Simmons's and Marshall's Eighth Amendment rights. O'Neal and Cook contend that Simmons and Marshall failed to prove the necessary objective and subjective components of an Eighth Amendment violation. We disagree.

O'Neal and Cook made the decision to confine Simmons and Marshall in the maximum security cells but failed to *"ensure* that [Simmons and Marshall] receive[d] adequate food ... and medical care." *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970 (emphasis added). For example, in the entire thirty-two hour confinement in the maximum security cells, Simmons and Marshall missed four consecutive meals because their wheelchairs could not reach the food tray slots. Simmons and Marshall also were unable to have a bowel movement because they failed to receive the necessary supplies or assistance. Such conditions denied Simmons and Marshall "the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970. Therefore, we conclude that Simmons and Marshall satisfied the objective component of an Eighth Amendment violation.

We also find Simmons and Marshall established the necessary subjective element of an Eighth Amendment violation. As noted, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842, 114 S.Ct. 1970. Here, Simmons's and Marshall's condition, as paraplegic and wheelchair-bound, was obvious and apparent to any layperson. The maximum security cells' condition was also undisputed. That is, a wheelchair could not pass through the cell doors and maneuver around the cell bunk to reach the food tray slot and the toilet had no handrails. In fact, O'Neal was physically present when Simmons and Marshall were placed in the maximum security cells and witnessed that their wheelchairs would not fit through the door and could not reach the food tray slot. Although Cook approved Simmons's and Marshall's confine-

ment in the maximum security cells from his home, Cook worked the entire next day but never ensured that appropriate steps were made to avoid the substantial risks associated with confining these paraplegic, wheelchair-bound inmates in these maximum security cells. Despite the obvious inadequacies of these cells, neither O'Neal nor Cook ensured that Simmons and Marshall were provided their food trays or given the appropriate assistance so that they could have bowel movements. Therefore, we conclude that this circumstantial evidence demonstrates "very obvious and blatant circumstances" from which it is proper to infer that O'Neal and Cook knew such risks existed but were deliberately indifferent to Simmons's and Marshall's health and safety. *Spruce,* 149 F.3d at 785–86.

■ O'Neal and Cook further argue that the district court erred in relying upon respondeat superior principles to find them liable for an Eighth Amendment violation. Although we agree that respondeat superior liability is an improper basis to find an Eighth Amendment violation under section 1983, *see Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir.1993), we emphasize that we find that O'Neal and Cook themselves violated the Eighth Amendment because "their corrective inaction amount[ed] to 'deliberate indifference'." *Id.* (internal quotation and citation omitted).

O'Neal and Cook also contend that the district court failed to give prison officials the appropriate deference needed to preserve internal order and discipline and to maintain institutional security when it stated that there was "no justification for placing [Simmons and Marshall] into the hole on the night in question." Appellants' Add. at A–14. Although we agree that the district court failed to give prison officials the appropriate deference to discipline Simmons and Cook for violating prison's rules in this case, *see Jackson v. Everett,* 140 F.3d 1149, 1152–53 (8th Cir.1998), "[w]e may affirm the district court's ruling on any basis supported by the record." *Schoenfeld v. Parkway Sch. Dist.,* 138 F.3d 379, 382 (8th Cir.1998). Because we find that Simmons and Marshall proved both the objective and subjective elements of their

Eighth Amendment claims against O'Neal and Cook, we affirm the district court's liability finding.

■ We next turn to O'Neal's and Cook's argument that the district court abused its discretion in awarding Simmons and Marshall each $2000 compensatory damages for their thirty-two hour solitary confinement. O'Neal and Cook contend that this award is arbitrary and excessive because it exceeds any of the other damage awards this Court has approved in previous opinions. We disagree.

■ "We review a district court's damages award in a § 1983 action under the abuse of discretion standard. If the damages award is arbitrary and excessive, this court will remand for recalculation." *Stevens v. McHan*, 3 F.3d 1204, 1207 (8th Cir.1993). In the present case, the district court noted that "[t]he testimony of [Simmons and Marshall] was some of the most compelling this court has ever heard." Appellant's Add. at A-8. Although we note that the typical range of per day damage awards for unconstitutional solitary confinement is less than the $2000 award in this case,[5] we find that the facts in this case are sufficiently egregious;[6] therefore, we cannot conclude that the district court abused its discretion. *See Webb v. Arresting Officers*, 749 F.2d 500, 501 (8th Cir.1984) ("[W]e continue to adhere to the view that the inadequacy or excessiveness of an award is basically a matter for the trial court. We have intervened only in those rare situations where we are pressed to conclude that there is plain injustice or a monstrous or shocking result.") (internal quotations and citations omitted). Accordingly, we affirm the district court's compensatory damage award of $2000 to both Simmons and Marshall.

5. *See, e.g., Maxwell v. Mason*, 668 F.2d 361, 366 (8th Cir.1981) ($100 per day for solitary confinement); *Smith v. Rowe*, 761 F.2d 360, 368 (7th Cir.1985) (approximately $119 per day for segregation).

6. Here, Cook's and O'Neal's deliberate indifference resulted in an extreme denial of "the mini-

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

mal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. We find it especially troubling that Simmons and Marshall were unable to eat or have a bowel movement for the entire thirty-two hours that they were confined in the maximum security cells.