**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RONALD P. FOSTER,
          *Plaintiff-Appellant,*

v.

D.L. RUNNELS,
          *Defendant-Appellee.*

No. 06-15719

D.C. No.
CV-03-01113-DFL

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Submitted December 12, 2008*
San Francisco, California

Filed February 5, 2009

Before: Robert E. Cowen,** Sidney R. Thomas and
Richard A. Paez, Circuit Judges.

Opinion by Judge Cowen

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

**COUNSEL**

Megan R. O'Carroll, Esq., and Constance L. Picciano, Esq., Office of the California Attorney General, Sacramento, California, for the appellee.

Ronald P. Foster, SVSP, Salinas Valley State Prison, Soledad, California, for the appellant, pro se.

**OPINION**

COWEN, Circuit Judge:

Ronald Foster, *pro se*, appeals the order of the District Court for the Eastern District of California granting summary judgment to Defendant Sandra Cole on Foster's 42 U.S.C. § 1983 claim. Foster claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Cole deprived him of 16 meals over a 23 day period. The District Court granted summary judgment on the grounds that Cole was entitled to qualified immunity because the constitutional right was not clearly established at the time of the alleged violation such that it would have been clear to a reasonable officer that her conduct was unlawful.

For the reasons set forth below, we conclude that Cole is not entitled to qualified immunity. On the basis of the evidence presented, a jury could find that Foster suffered a sufficiently serious deprivation and that Cole was deliberately indifferent to the obvious risk of harm. In addition, it is clearly established under the Eighth Amendment that prison

officials are obligated to provide inmates with nutritionally adequate meals on a regular basis. Consequently summary judgment on Foster's § 1983 claim is inappropriate. The District Court's order will be reversed and the case remanded for further proceedings.

## I.

During the summer of 2001, while Foster was an inmate at the High Desert State Prison ("HDSP") in Susanville, California, there was a rash of inmate assaults on prison staff in Facility C where Foster was housed. A number of the incidents occurred as prison staff attempted to handcuff inmates through the food/cuff port in the cell doors. Several handmade weapons were also confiscated from inmates' cells. None of these incidents were attributed to Foster.

As a result of these incidents, Facility C was on lockdown. When the HDSP is on lockdown, inmates are not permitted to leave their cells, even for meals. Prison staff is responsible for distributing meals to the inmates in their cells. The food is received through the food/cuff ports in the cell doors.

In February 2001, HDSP Warden R. L. Runnels issued a memorandum to prison staff in an attempt to crack down on inmates displaying pornography in their cells. Warden Runnels had observed that in violation of prison security policy, inmates were covering with paper the windows that allowed prison staff to look into their cells. The memo stated that the cell windows, which ensure the safety and security of prison staff, as well as the inmates, could not be covered at any time.

On July 27, 2001, the sergeants and lieutenants in Facility C issued a memo regarding the obstruction of the windows in inmates' cells in light of the recent incidents on the ward. The memo stated that before the food/cuff port could be opened, the bright light in the inmate's cell must be turned on and anything covering the front or rear windows of the cell must be

removed. Any inmate who failed to comply with these rules forfeited participation in the current activity, including receiving food at meal times.

Corrections Officer Sandra Cole was frequently responsible for distributing meals to the inmates while Facility C was on lockdown. On July 21, July 28, and one other occasion in July or August, Cole did not provide Foster with either breakfast or lunch. Foster maintains that Cole also denied him breakfast and lunch on July 22, July 29, August 4, August 5, August 11, and August 12.

Cole maintains that on each occasion, the windows of Foster's cell were covered with paper. She maintains that she instructed Foster to remove the paper from the windows, but that Foster refused to comply. Cole claims that she was unable to see into Foster's cell well enough to safely open the food/cuff port. Foster, however, maintains that there was only paper in the back window of his cell. Foster alleges that Cole could see into his cell and that she could have safely fed him. No other guard required Foster to remove the paper from his window nor refused to feed him on account of its presence.

On September 12, 2001, Warden Runnels issued a staff memo regarding the feeding of inmates whose windows were covered during a lockdown. The memo was intended to correct the actions of prison staff who had "taken it upon themselves to not feed inmates based upon the belief that any type of window covering presents a security risk." (ER 185.) The warden did not expect staff to open the food/cuff port when inmates did not have the bright light on, the front windows were covered, or the staff member "feels that there is a substantial risk to safety." *Id.* However, the warden instructed that prison staff was not to construe the memo as "permission to not feed the inmates." *Id.* Rather, the memo instructed that when a staff member determined that there was a substantial risk to safety, the inmate should be instructed to remove any covering from the window or turn on the cell lights. If the

inmate refused to comply, the staff member should continue feeding the rest of the inmates and then immediately notify a supervisor. The supervisor was required to evaluate the situation and take the necessary action to ensure that inmates were fed. The warden stressed that "inmates ARE to be fed when it is safe to do so"; security concerns could only temporarily suspend the feeding of an inmate. (ER 186.)

Foster maintains that even after Warden Runnels' memo, Cole refused to feed him on October 31, 2002, and then again on January 2, 2003. Foster maintains that he lost 15 lbs. in July and August of 2001. Foster's testimony and medical records, however, suggest that he may have actually lost 13 lbs. between June 2001 and October 2001.

On May 19, 2003, Foster filed a complaint in the District Court for the Eastern District of California alleging violations of his Eighth Amendment rights under 42 U.S.C. § 1983. In an Amended Complaint, Foster alleged that Warden Runnels and Corrections Officer Cole violated his Eighth Amendment rights by denying him food and showers as punishment for his failure to remove paper from his cell windows. Runnels and Cole moved for summary judgment.

A Magistrate Judge recommended that summary judgment be granted in favor of Warden Runnels as he had no involvement in Cole's decisions to withhold Foster's meals. The Magistrate Judge also recommended that summary judgment be granted in favor of Cole on Foster's denial of showers claim because no Eighth Amendment violation had been established. Finally, the Magistrate Judge found that Foster had established an Eighth Amendment violation on his denial of meals claim and that Cole was not entitled to qualified immunity.

The District Court accepted the Magistrate Judge's recommendations as to Warden Runnels and Foster's denial of shower claim. The District Court however found that Cole

was entitled to qualified immunity because the constitutional right in question was not clearly established. Foster has only appealed the District Court's finding that Cole is entitled to qualified immunity.

## II.

This court has jurisdiction pursuant to 28 U.S.C. § 1291 and we review *de novo* a district court's decision to grant summary judgment based on qualified immunity. *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). Viewing the evidence in the light most favorable to the non-moving party, we determine whether there are any genuine issues of material fact that must be resolved at trial, and whether the district court correctly applied the relevant substantive law. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 848 (9th Cir. 2004). Summary judgment may be affirmed on any ground supported by the record, even if not relied upon by the District Court. *Id.*

Foster argues that the District Court erred in concluding that Cole was entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," which, in certain circumstances, shields government officials from civil liability for actions taken in the course of their duties. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). For an official to be immune from suit, the court must find that the official's conduct has not violated any "clearly established" constitutional right "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The qualified immunity analysis breaks down into a two-part inquiry. The threshold question is whether the alleged facts show that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concern-

ing qualified immunity." *Id.* If, however, the allegations establish that a constitutional right has been violated, the next question is whether the violated right was "clearly established." *Id.* This inquiry "must be undertaken in light of the specific context of the case," and not as a "broad general proposition." *Id.*

## A. Violation of a Constitutional Right

**[1]** Foster maintains that Cole violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him meals when Facility C was on lockdown because he would not remove paper that was covering the rear window of his cell. The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.*

**[2]** Establishing a violation of the Eighth Amendment requires a two-part showing. First, an inmate must objectively show that he was deprived of something "sufficiently serious." *Farmer*, 511 U.S. at 834. A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of 'the minimal civilized measure of life's necessities.' " *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The inmate must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

### (1) Sufficiently Serious Deprivation

**[3]** The deprivation that Foster alleges is the repeated denial of meals over a 23-day period in July and August, 2001. It is undisputed that between July 21 and August 12, Cole did not serve Foster breakfast or lunch on three occa-

sions and Foster alleges that he was denied breakfast and lunch on at least five other days. In total, Foster claims that he was denied 16 meals in 23 days.[1] This is a sufficiently serious deprivation because food is one of life's basic necessities. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) ("Adequate food is a basic human need protected by the Eighth Amendment.").[2]

Relying on *Rodriguez v. Briley*, 403 F.3d 952 (7th Cir. 2005) and *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998), Cole argues that the denial of meals is not a serious deprivation within the meaning of the Eighth Amendment if the denials are a result of the inmate's personal choice not to comply with simple prerequisites to obtaining meals. Cole asserts that when an inmate refuses to comply with simple instructions, he effectively controls his ability to receive the meal. Because the inmate is in control, according to Cole, the Eighth Amendment is not implicated.

In *Rodriguez*, the Seventh Circuit found no Eighth Amendment violation where an inmate was denied meals and showers for refusing to comply with a prison rule. The rule required inmates to store certain belongings in storage boxes and forbade them from leaving their cells unless the items

---

[1]Foster also claims to have been denied meals by Cole on October 31, 2002, and on January 2, 2003. These relatively isolated occurrences do not appear to rise to the level of a constitutional violation.

[2]Although food is a basic human need, the Eighth Amendment "requires only that prisoners receive food that is adequate to maintain health." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). The record contains no evidence of the nutritional value of the prison meals or whether one meal could provide Foster with sufficient calories and nutrients to sustain him for an entire day. Foster alleges that he lost weight during the period in which he was denied meals and that he suffered headaches and dizziness as a result of inadequate nutrition. Because all inferences must be drawn in Foster's favor, it should be presumed that the meals Foster was provided were inadequate to maintain health and that he has suffered a cognizable harm under the Eighth Amendment.

were in the boxes. 403 F.3d at 952. Because the inmate refused to put his belongings in his storage box, he was not permitted to leave his cell for meals or showers. The Seventh Circuit held that "deliberate noncompliance with a valid rule does not convert the consequences that flow automatically from that noncompliance into punishment." *Id.* at 952-53. Rather than being unjustly punished by the prison, the Seventh Circuit found that the inmate "punished himself" by failing to comply with a reasonable condition, which resulted in the inmate missing out on meals and showers. *Id.* at 953.

Similarly in *Talib*, the Fifth Circuit found no Eighth Amendment violation where an inmate was denied meals because he refused to comply with in-cell feeding measures. Prison regulations required inmates to kneel facing the wall with their hands behind their backs when meals were served in the inmates' cells during a lockdown. 138 F.3d at 214. The inmate was denied approximately fifty meals over a span of five months because he would not assume the proper position. *Id.* at 212. The Fifth Circuit concluded that the prison policy was "reasonably related" to the prison officials' "legitimate penological interest" in having the inmates assume a non-threatening position during in-cell feeding. *Id.* at 214. The prison guard responsible for serving the meals was justified in requiring the inmate to assume the mandated position; the inmate chose not to comply and consequently chose to forfeit his meals. *Id.* at 215-16. As this was the inmate's "personal decision," no violation of the Eighth Amendment had been established. *Id.* at 216.

**[4]** However, in both *Rodriguez* and *Talib*, it was uncontested that the inmates had violated an established prison policy. In this case, although there is no doubt that the HDSP had an institutional policy prohibiting inmates from covering their cell windows or that requiring an unobstructed view into an inmate's cell serves a legitimate penological interest, Foster has presented evidence that his conduct did not interfere with staff safety during in-cell feeding. Foster admits that his back

window was covered, but he claims that nothing obstructed the view into his cell through the front window.[3] Although there may be "a difference between using food deprivation as a punishment and establishing a reasonable condition to the receipt of food," *Freeman v. Berge*, 441 F.3d 543, 545 (7th Cir. 2006), Cole has not established how removing the paper from the rear window of a cell is a reasonable condition on the receipt of food. Nor has she explained how Foster's failure to remove the paper from his cell's back window jeopardized her safety or security during in-cell feeding.[4] Drawing the factual inferences in Foster's favor, Cole's denial of food can constitute an unjustified and unnecessarily punitive response to a rules violation.

**[5]** The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose. *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002). In the same way that an inmate relies on prison officials to provide appropriate medical care, *see Estelle v. Gamble*, 429 U.S. 97 (1976), and protection from assaults by other inmates, *see Farmer v. Brennan*, 511 U.S. 825 (1994), inmates rely on prison officials to provide them with adequate sustenance on a daily basis. The repeated and unjustified failure to do so amounts to a serious depravation.

### (2)   Deliberate Indifference

**[6]** To establish a prison official's deliberate indifference, an inmate must show that the official was aware of a risk to the inmate's health or safety and that the official deliberately

---

[3]Foster's own statement that his front window was not covered is supported by the written declarations of two other inmates.

[4]The record contains no information on the layout and configuration of the cells in Facility C. A more detailed description of the cells may explain why it was necessary that both the front and back windows be uncovered in order for prison staff to safely open the food/cuff port. However, on the current record, there is no obvious penological interest in having a cell's back window free from obstruction.

disregarded the risk. *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000). Although an inmate is required to show awareness of the risk, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. "[I]f an inmate presents evidence of very obvious and blatant circumstances indicating that the prison official knew the risk existed, then it is proper to infer that the official must have known [of the risk]." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (internal quotation marks omitted).

**[7]** The risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious. On the basis of Foster's evidence that Cole refused to provide him with meals on numerous occasions and took no alternative measures to ensure that he was fed, a jury could infer that Cole deliberately disregarded Foster's need for adequate nutrition. *See Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002). This risk is "sufficiently obvious" to create a question of fact as to whether Cole displayed deliberate indifference to a substantial risk of harm. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999).

**[8]** Accordingly, Foster has established a violation of his Eighth Amendment rights sufficient to withstand summary judgment. He has presented evidence that would allow a jury to conclude that with deliberate disregard for his health and safety, Cole repeatedly deprived him of one of life's basic necessities, and thereby wantonly inflicted on him unnecessary pain and punishment.[5]

---

[5]This conclusion, that the deliberate and unnecessary withholding of food essential to maintain normal health can violate the Eighth Amendment, is well supported by case law. *See Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) (reversing dismissal of inmate's Eighth Amendment claim because inmate had alleged that his restricted diet was nutritionally inadequate and was wantonly inflicting pain without penological justification); *Reed v. McBride*, 178 F.3d 849, 853-56 (7th Cir. 1999)

## B.   Clearly Established Right

**[9]** The District Court found that Cole was entitled to qualified immunity because the Eighth Amendment right to adequate food was not clearly established such that it would be clear to a reasonable corrections officer that her conduct was unlawful. A right is "clearly established" when its contours are sufficiently defined, such that "a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the law does not "put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). If, however, the court finds that a reasonable official would have known that the alleged conduct was in violation of a clearly established constitutional right, then immunity is forfeited.

**[10]** There is no question that an inmate's Eighth Amendment right to adequate food is clearly established. *See Far-*

(reversing grant of summary judgment on inmate's Eighth Amendment claim because the alleged deprivation of food was sufficiently serious and prison officials' deliberate indifference was obvious); *Simmons v. Cook*, 154 F.3d 805, 807-09 (8th Cir. 1998) (affirming Eighth Amendment violation where inmates were deprived of four consecutive meals); *Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir. 1983) (finding that allegations of deprivation of meals and contaminated food were sufficient to withstand dismissal of inmate's Eighth Amendment claim); *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977) (remanding for consideration of whether one meal per day was adequate or whether withholding two meals a day deprived the inmate of food sufficient to maintain normal health); *Dearman v. Woodson*, 429 F.2 1288, 1290 (10th Cir. 1970) (reversing dismissal of inmate's Eighth Amendment claim because inmate's allegations of sustained food deprivation were sufficient to state a cause of action); *Williams v. Coughlin*, 875 F. Supp. 1004, 1015 (W.D.N.Y. 1995) (denying summary judgment to prison officials on inmate's Eighth Amendment claim because withholding inmate's food was a sufficiently serious deprivation); *Moss v. Ward*, 450 F. Supp. 591, 596-97 (W.D.N.Y. 1978) (finding an Eighth Amendment violation where an inmate's food was withheld because inmate refused to return a cup in violation of prison rules).

*mer*, 511 U.S. at 832; *Keenan*, 83 F.3d at 1091. A reasonable corrections officer should know that when an inmate can be fed without risk to the prison officer's safety—as is assumed to be the case here—the prison official cannot arbitrarily deny an inmate his meals. *See* Cal. Code Regs. tit. 15, § 3050(a)(2) (2000) (requiring that inmates "shall be provided three meals a day, two of which shall be served hot"). A reasonable officer should know that to do so could violate the inmate's Eighth Amendment rights by imposing punishment without penological justification.

Cole nevertheless argues that her actions were reasonable and that because there is no Ninth Circuit authority on point, she had no way of knowing that her conduct was unlawful. These arguments are unavailing. "[T]he law may be clearly established even if there is no case directly on point . . . . It is enough if 'in the light of pre-existing law the unlawfulness is apparent.' " *Inouye v. Kemna*, 504 F.3d 705, 715 (9th Cir. 2007) (quoting *Wilson*, 526 U.S. at 615). *See also Morgan v. Morgensen*, 465 F.3d 1041, 1046 (9th Cir. 2006) (finding an inmate's Eighth Amendment right to be clearly established despite a split in authority among the circuits).

**[11]** The decisions from this Circuit and others alerting prison officials of their obligations to provide inmates with nutritionally adequate meals on a regular basis should have given Cole sufficient notice of the contours of the Eighth Amendment right. Cole cannot seek shelter in the reasonableness of her actions on the basis of the July 27 memo outlining the in-cell feeding policy for Facility C. *See Cooper v. Sheriff*, 929 F.2d 1078, 1083 (5th Cir. 1991) ("The mere existence of . . . a regulation is not an automatic shield against a civil rights suit."). Indeed, the memo issued by the HDSP warden on September 12 suggests that forfeiture of meals or an activity for failing to remove coverings from all windows was never an official HDSP policy, but rather a measure temporarily implemented in Facility C. Furthermore, Cole's conduct was not reasonable because she took no other action to ensure

that her obligation to provide Foster with meals was met. Consequently, she is not entitled to qualified immunity.

### III.

**[12]** For the reasons set forth above, the order of the District Court granting summary judgment to Cole on the grounds of qualified immunity is REVERSED and the case REMANDED for further proceedings.