**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARCO A. SANTIAGO, | No. 19-36019 |
| Plaintiff-Appellant, | DC No. 3:18-cv-05825-RBL |
| v. | |
| BRUCE C. GAGE, Sued in his individual and official capacity; RYAN HARRINGTON, Sued in his individual and official capacity; SCOTT LIGHT, Sued in his individual and official capacity, | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | |
| Defendant. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted May 5, 2021

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Seattle, Washington

Before:     BOGGS,** TASHIMA, and MURGUIA, Circuit Judges.

Marco Santiago, now known as Ashley Raelynn, appeals the judgment of the district court in favor of defendants Bruce Gage, Ryan Harrington, and Scott Light, three medical professionals employed by the Washington State Department of Corrections ("DOC"). We have jurisdiction under 28 U.S.C. § 1291, we review de novo a grant of summary judgment, *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015), and we affirm.

To establish a claim of deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment, "the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (per curiam) (alterations in original) (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)).

**1.**     No reasonable jury could find that Gage's decision to require additional assessments following the March 26, 2018, meeting of the Gender

---

**     The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Dysphoria Care Review Committee ("GD-CRC") was medically unacceptable. Gage testified that additional assessments were medically appropriate to confirm Raelynn's diagnosis and readiness for treatment. The record contains no testimony or other evidence to the contrary.

Raelynn argues that a jury could infer that Gage's actions were medically unacceptable because they violated the World Professional Association for Transgender Health ("WPATH") Standards of Care. Even assuming, however, that the WPATH Standards of Care are entitled to deference, they simply do not discuss the assessments Gage ordered. His actions, therefore, do not violate the Standards of Care on their face. Further, Raelynn presented no testimony to support her contention that Gage's actions violated the Standards of Care. Moreover, as we noted in *Edmo*, "the WPATH Standards of Care are flexible, and a simple deviation from those standards does not alone establish an Eighth Amendment claim." *Id.* at 789.

Raelynn's other attempts to show that Gage's actions were medically unacceptable fail as well. There is no evidence in the record suggesting that Gage's actions were contrary to the DOC's Gender Dysphoria Protocol. Nor is there any evidence that Raelynn's treating therapist and psychiatrist, Alyea and Furst, disagreed with Gage's actions. Furthermore, even if Alyea and Furst

3

disagreed with Gage, typically "[a] difference of opinion . . . between medical professionals . . . concerning what medical care is appropriate does not amount to deliberate indifference." *Id.* at 786 (first alteration in original) (quoting *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc)). Likewise, the fact that the GD-CRC found no contraindications to treatment does not demonstrate that Gage's actions were medically unacceptable. Finally, there is no evidence that Gage "improperly denied hormone therapy authorization for reasons unrelated to Raelynn's medical needs," as Raelynn argues.

In sum, the evidence does not support a jury finding that Gage's actions were medically unacceptable. The district court therefore properly granted summary judgment to Gage.[1]

**2.** We decline to reach Raelynn's argument that Gage violated the Eighth Amendment by failing to review her case at the February 2018 GD-CRC meeting. Raelynn raises this argument for the first time in her reply brief. The argument is therefore waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)

---

[1] Although Gage passed away shortly before oral argument, Raelynn's claims against him continue to present a live controversy. *See* Wash. Rev. Code § 4.20.046(1). Gage's personal representative may be substituted under Fed. R. App. P. 43(a)(1) and Fed. R. Civ. P. 25(a)(1). We were informed at oral argument that such a personal representative has not yet been appointed.

("[A]rguments not raised by a party in its opening brief are deemed waived." (citation omitted)).

**3.** No reasonable jury could find that Harrington's decision to seek an endocrinologist's opinion was medically unacceptable. Harrington and Light testified that the endocrinology consultation was medically appropriate given Raelynn's elevated prolactin levels. The record contains no testimony to the contrary. Furthermore, although the endocrinologist, Dr. Hammond, concluded that Raelynn's prolactin levels did not foreclose treatment, there is nothing in his medical report to suggest that the consultation was unwarranted.

Raelynn points out that the GD-CRC may have been aware of her elevated prolactin levels, but nevertheless approved treatment without calling for an endocrinology consultation. Viewing the evidence in Raelynn's favor, as we must, *Scott v. Harris*, 550 U.S. 372, 378 (2007), we assume that this was the case. At most, however, this establishes that Harrington disagreed with the GD-CRC's medical opinion. As noted, a disagreement among medical professionals, without more, does not establish that Harrington's actions were medically unacceptable. *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014).

Raelynn suggests that Harrington's decision to require an endocrinology consultation violated the DOC's Gender Dysphoria Protocol. This Protocol,

however, states only that "facility clinical staff . . . shall develop a treatment plan that is *in accordance with* the treatment interventions authorized by GD CRC." Raelynn has not adduced any evidence to show that the consultation Harrington ordered was not in accordance with the treatment authorized by the GD-CRC. Furthermore, even if Harrington violated DOC policy, that fact would not establish that his actions were medically unacceptable. As the district court pointed out, a violation of DOC policy "does not automatically have constitutional ramifications."

Raelynn alternatively suggests that Harrington's decision was medically unacceptable because it conflicts with the WPATH Standards of Care. But once again, the WPATH Standards of Care are simply silent on this subject. Raelynn has presented no testimony or other evidence to show that Harrington's decision in fact contradicted the WPATH Standards of Care.

In sum, the record does not include evidence from which a reasonable jury could find that Harrington's actions were medically unacceptable. The district court therefore properly granted him summary judgment.

**4.** The district court also properly granted summary judgment to Light. Light, a certified physician assistant, was not deliberately indifferent to Raelynn's medical needs merely because he waited for the endocrinology consultation to be

6

completed before commencing treatment. As discussed above, no reasonable jury could find based on the evidence in this record that the consultation ordered by Harrington—Light's superior—was medically unacceptable.

After the endocrinologist cleared Raelynn for treatment on August 30, 2018, Light scheduled Raelynn for his next available appointment, which was on October 12, 2018. Raelynn argues that this delay was medically unacceptable, but no evidence in the record suggests that Raelynn's scheduled treatment was medically more urgent than the treatment of other patients of Light with already-scheduled appointments, such that Light, as a matter of medical urgency, should have "bumped" another scheduled patient in favor of Raelynn. Given this record, there is no basis for concluding that Light acted in a medically unacceptable manner in scheduling Raelynn's treatment for the first available appointment.

The cases upon which Raelynn relies are distinguishable because they involved urgent medical needs, *see Sandoval v. County of San Diego*, 985 F.3d 657, 661–62 (9th Cir. 2021); *Lolli v. County of Orange*, 351 F.3d 410, 418–21 (9th Cir. 2003), or longer delays, *Hunt v. Dental Dep't*, 865 F.2d 198, 199–200 (9th Cir. 1989); *Jett v. Penner*, 439 F.3d 1091, 1097–98 (9th Cir. 2006).

The record also does not support Raelynn's contention that Light consciously disregarded an excessive risk to her health. Raelynn suggests that,

during the September 2018 time frame, Light was aware that she was suffering "unremitting emotional pain to include anxiety, depression, [and] suicidal thoughts . . . while awaiting treatment." Light, however, testified that he had no communication with Raelynn during this period, and the medical kites during this period that Raelynn submitted do not describe these symptoms.[2]

In sum, the district court properly granted summary judgment to Light on the ground that Raelynn has failed to show that Light acted, or failed to act, out of deliberate indifference to her medical needs.[3] *See Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004) (affirming a grant of summary judgment for the defendant on an inmate's § 1983 claim alleging deliberate indifference to serious medical needs in violaation of the Eighth Amendment).

• ● •

Our decision should not be read as suggesting that long delays, such as those Raelynn encountered in obtaining medically necessary treatment, will never violate

---

[2] Although Light testified that he did not see these kites, we assume for purposes of our analysis that he did. *Cf. Jett*, 439 F.3d at 1097.

[3] Given this basis for our decision, we need not reach Raelynn's argument that qualified immunity is "inapplicable outside of contexts where officials are forced to act in exigent circumstances, without the benefit of time or guidance." We do note, however, that we have previously considered the appropriateness of qualified immunity in Eighth Amendment cases not involving exigent circumstances. *See, e.g.*, *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

8

the Eighth Amendment.  We hold only that, on the sparse evidence presented in this case, Raelynn has not shown that these defendants violated her Eighth Amendment rights.

**AFFIRMED**.[4]

---

[4]    We thank the faculty advisors and student participants of the University of Washington School of Law's Ninth Circuit Appellate Advocacy Clinic for their *pro bono* representation of Plaintiff-Appellant.