Walter E. WHITE; James C. Griffin, Plaintiffs–Appellants,

v.

CITY OF NORWALK; William H. Kraus, City Administrator; Robert E. White, City Councilman, City of Norwalk; Cecil N. Green, City Councilman, City of Norwalk; J. Kenneth Brown, City Attorney, City of Norwalk; Daniel Lispi, Defendants–Appellees.

No. 88–6430

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 1989.

Decided April 18, 1990.

Jeffrey M. Epstein, Los Angeles, Cal., for plaintiffs-appellants.

John C. Barber of Wood, Ward, and Garnett, Tustin, Cal., for defendants-appellees.

Before BROWNING, FARRIS and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Walter E. White and James C. Griffin brought this action against the City of Norwalk, California, and certain of its officials, under 42 U.S.C. § 1983. White and Griffin are citizens of Norwalk who were ruled out of order when they spoke or attempted to speak at City Council meetings. In district court, they sought: (1) a declaration of unconstitutionality and injunction against enforcement of Norwalk Municipal Code § 2–1.2, which prescribes rules for persons addressing the City Council; and (2) damages against the City and its officials for

preventing plaintiffs from speaking, in violation of their rights of free speech and equal protection of the laws. The district court denied declaratory and injunctive relief, and a jury rejected the damages claim. We affirm both decisions.

## I. Factual Background

The events that precipitated this litigation took place at three meetings of the Norwalk City Council between 1979 and 1982. At the first meeting, on October 9, 1979, plaintiff White was recognized to speak during a discussion concerning a contract for the City's annual calendar. White contends that while he was speaking, a council member interrupted him and incorrectly claimed that there was a motion on the floor and that White would accordingly have to stop speaking. White states that when he attempted to continue, the mayor had him escorted from the room by a deputy sheriff. The defendants contend that White was ruled out of order for being unduly repetitive and was escorted to his seat for refusing to stop talking after the Major ruled him out of order and asked him to desist.

The second meeting in question took place in either January, February or March of 1980. Plaintiff Griffin claims that he was speaking on an agenda item when he was interrupted by a council member who declared him out of order and had him escorted out of the Council chambers. Griffin did not recall the topic he was addressing nor what he said, but he testified that he made no personal attacks and did not yell, curse or use foul language. The defendants contend that there was simply no evidence sufficient to establish what occurred, and suggest that Griffin was probably ruled out of order for being repetitive.

1. The meetings of October 9, 1979 and January 25, 1982 were taperecorded, and the jury was provided with transcripts. The meeting involving Griffin in early 1980 could not be identified with particularity; it appears that some meetings during that period were not taped.

2. The jury was not, for example, instructed that plaintiffs were properly ruled out of order if they had made "personal, impertinent, slander-

The third meeting occurred on January 25, 1982. White alleged that he was speaking about a legal matter involving a city official. He claimed that he was told that the subject was a personal matter and that he should submit his information in writing. He alleged that when he attempted to take a written statement out of his pocket to distribute to the Council, he was immediately ruled out of order and removed from the room.[1]

White and Griffin brought this action in October 1982, seeking to have the Norwalk City Ordinance governing appearances before the City Council declared unconstitutional and enjoined, and also seeking damages for interference with their first and fourteenth amendment rights on the three occasions discussed above. Both claims having been denied, they appeal.

## II. Challenge to the Ordinance

In order to understand this case, it is essential to know that there is surprisingly little relationship between plaintiffs' claim for declaratory and injunctive relief and their claim for damages. Plaintiffs attack the ordinance purely as being unconstitutional on its face, for overbreadth and vagueness. They have laid no foundation for attacking it as applied. The provisions of the ordinance that they challenge played no part in the jury trial concerning their three abortive appearances before the City Council, and the jury was not instructed on the ordinance.[2] Indeed, the record indicates that the ordinance was adopted in January 1980, after the first meeting in dispute had occurred.

Plaintiffs are consequently compelled to show that the ordinance is void on its face, if they are to succeed. The ordinance provides, in pertinent part:

ous or profane remarks." On the contrary, the case was argued and presented by the judge to the jury as one that turned simply on whether plaintiffs were "reasonably" ruled out of order; that is, whether they had already made their points to the Council and were becoming repetitious. Plaintiffs do not raise any contention that the issue was improperly framed for the jury.

2–1.1(b) Rules of Decorum. While any meeting of the City Council is in session, the following rules of order and decorum shall be observed:

3. Persons Addressing the Council ... Each person who addresses the Council shall not make personal, impertinent, slanderous or profane remarks to any member of the Council, staff or general public. Any person who makes such remarks, or who utters loud, threatening, personal or abusive language, or engages in any other disorderly conduct which disrupts, disturbs or otherwise impedes the orderly conduct of any Council meeting shall, at the discretion of the presiding officer or a majority of the Council, be barred from further audience before the Council during that meeting....

2–1.1(d) Enforcement of Decorum. The rules of decorum set forth above shall be enforced in the following manner:

1. Warning. The presiding officer shall request that a person who is breaching the rules of decorum be orderly and silent. If, after receiving a warning from the presiding officer, a person persists in disturbing the meeting, the presiding officer shall order him to leave the Council meeting. If such person does not remove himself, the presiding officer may order any law enforcement officer who is on duty at the meeting as sergeant-at-arms of the Council to remove that person from the Council chambers....

3. Resisting Removal. Any person who resists removal by the sergeant-at-arms shall be charged with a violation of this Section.

4. Penalty. Any person who violates any provision of this Section shall, pursuant to Section 1.08.010 of the Code, be guilty of a misdemeanor.

■ Plaintiffs focus particularly on the proscription against "personal, impertinent, slanderous or profane remarks." They argue that such imprecise and content-oriented terms render the ordinance fatally vague and overbroad, under well-recognized first amendment doctrine. *See, e.g., Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (criminal statute punishing utterance to another of "opprobrious words of abusive language" is void for overbreadth); *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974).

The City, however, offers a construction of the ordinance that is far narrower than that of plaintiffs. The City asserts that, properly construed, the ordinance does not permit discipline, removal or punishment of a person who *merely* utters a "personal, impertinent, slanderous or profane" remark. That provision is qualified, the City states, by the next sentence of the ordinance, which authorizes removal of any person:

who makes such remarks, or who utters loud, threatening, personal or abusive language, or engages in any *other* disorderly conduct which *disrupts, disturbs or otherwise impedes* the orderly conduct of the Council meeting....

Norwalk Mun.Code § 2–1.1(b)(3) (emphasis added). Thus, the City asserts that removal can only be ordered when someone making a proscribed remark is acting in a way that actually disturbs or impedes the meeting. The same threshold is required, according to the City's reading of the ordinance, for warning and removal under section 2–1.1(d)(1) and for prosecution under section 2–1.1(d)(4).

The ordinance can certainly be read in other ways, but we conclude that it is readily susceptible to the City's interpretation. We therefore adopt the City's narrower construction. *See Frisby v. Schultz,* 487 U.S. 474, 480–84, 108 S.Ct. 2495, 2500–01, 101 L.Ed.2d 420 (1988) (Court's narrow construction of ordinance supported by representations of town counsel as to town's interpretation).

Plaintiffs argue that, even as construed by the City, the ordinance is fatally overbroad. They point out that in *Gooding v. Wilson,* the statute struck down by the Court punished the use of " 'opprobrious words or abusive language, *tending to cause a breach of the peace.' " Gooding,* 405 U.S. at 519, 92 S.Ct. at 1104 (quoting Ga.Code Ann. § 26–6303) (emphasis added).

In *Gooding*, however, it was clear that the state's interpretation of "tending to cause a breach of the peace" required no actual breach, but simply focused on the offensiveness of the words. *Id.* at 525–27, 92 S.Ct. at 1107–08; *see also Tinker v. Des Moines Independent Community*, 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) (no showing of actual disruption of school operations by wearing of black armband).

A more fundamental flaw in plaintiffs' position is that their first amendment arguments do not take account of the nature of the process that this ordinance is designed to govern. We are dealing not with words uttered on the street to anyone who chooses or chances to listen; we are dealing with meetings of the Norwalk City Council, and with speech that is addressed to that Council. Principles that apply to random discourse may not be transferred without adjustment to this more structured situation.

City Council meetings like Norwalk's, where the public is afforded the opportunity to address the Council, are the focus of highly important individual and governmental interests. Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city. It is doubtless partly for this reason that such meetings, once opened, have been regarded as public forums, albeit limited ones. *See Madison School Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976); *Hickory Fire Fighters Ass'n, Local 2653 v.*

*City of Hickory*, 656 F.2d 917, 922 (4th Cir.1981).

On the other hand, a City Council meeting is still just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact.[3] In the first place, in dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand.[4] *Madison School Dist.*, 429 U.S. at 175 n. 8, 97 S.Ct. at 426 n. 8; *see Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985) (public forum may be created by government designating "place or channel of communication … for the discussion of certain subjects"). While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 60–61, 103 S.Ct. 948, 963, 74 L.Ed.2d 794 (1983) (Brennan, J., dissenting), it certainly may stop him if his speech becomes irrelevant or repetitious.[5]

Similarly, the nature of a Council meeting means that a speaker can become "disruptive" in ways that would not meet the test of actual breach of the peace, *see Gooding*, 405 U.S. at 526–27, 92 S.Ct. at 1108, or of "fighting words" likely to provoke immediate combat. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62

---

**3.** As Professor Robert Post has noted:

The most analytically interesting example of an institution designed to foster symbolic interaction is the town meeting, whose very purpose is the creation of a forum for public discourse and decisionmaking. Even that constitutionally benign purpose, however, when implemented through the authority of a moderator, has the power to limit speech through the imposition of agendas and rules of order and decorum. Many of these limitations are plainly contrary to ordinary first amendment principles.

*Post, Between Governance and Management: The History and Theory of the Public Forum*, 34 U.C.L.A.L.Rev. 1713, 1799 (1987)

**4.** The Norwalk City Council offers two kinds of opportunity to citizens to address the Council at meetings. During the regular part of the meeting, citizens can sign up to speak with regard to agenda items. Norwalk Mun.Code § 2–1.1.b.3. During a separate portion of the meeting devoted to "Oral Communications," citizens may be recognized from the floor to address any topic they choose, subject to the Council's determination of relevance. *Id.* at § 2–1.1.c.2.

**5.** The focus of plaintiffs' claim for damages, which was tried to a jury, was on the issue whether plaintiffs were or were not properly ruled out of order because they had made their point and were becoming repetitious.

S.Ct. 766, 769, 86 L.Ed. 1031 (1942). A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers.

Of course the point at which speech becomes unduly repetitious or largely irrelevant is not mathematically determinable. The role of a moderator involves a great deal of discretion. Undoubtedly, abuses can occur, as when a moderator rules speech out of order simply because he disagrees with it, or because it employs words he does not like. But no such abuses are written into Norwalk's ordinance, as the City and we interpret it. Speakers are subject to restriction only when their speech "disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting." So limited, we cannot say that the ordinance on its face is substantially and fatally overbroad.[6] *See Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973) (to invalidate statute on its face, overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.")

We therefore affirm the district court's denial of declaratory and injunctive relief.

### III. The Damages Claim

With regard to their damages claim, which was tried to the jury, plaintiffs raise two issues. First, they contend that the trial judge's comments to the jury on the evidence went beyond permissible limits. Second, they contend that the judge improperly excluded evidence of disagreements between the City Council and the plaintiffs that antedated the incidents in issue. We reject both contentions.

■ The trial judge did make comments to the jury that went beyond the normal instructions. With regard to damages, the judge suggested that "if a person is treat-

ed with courtesy, he's not likely to be subjected to ... substantial anguish and emotional distress." With regard to Griffin's hazily recalled appearance before the Council, the judge said that "if he [Griffin] doesn't know what it was and what he was saying, I would think it would be difficult to conclude that he had been—that his constitutional rights had been deprived."

■ On the basis of these and other remarks, the plaintiffs contend that the trial judge argued the case for one side, and took a position in front of the jury on the ultimate issues of fact. It is clear that a trial judge may comment on the evidence, "but he may not either distort it or add to it." *Quercia v. United States*, 289 U.S. 466, 469–70, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1933). Certainly the practice is not without its dangers. But the ultimate question is "whether the judge has made 'it clear to the jury that all matters of fact are submitted to their determination.'" *United States v. Kelm*, 827 F.2d 1319, 1323 (9th Cir.1987) (quoting *Quercia*, 289 U.S. at 469, 53 S.Ct. at 698). Here, the judge more than once emphasized that his comments could be disregarded and that all questions of fact were solely for the jury's determination.

Moreover, this was not a complicated factual trial turning on questions of credibility, as in *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 471 (9th Cir.1978), relied upon by plaintiffs. For two of the meetings, the jury had a transcript that eliminated questions of historical fact. Our review of the whole record convinces us that the judge did not distort the fact-finding process by his comments, or unfairly prejudice plaintiffs. We find no abuse of discretion.

■ Finally, plaintiffs argue that the trial court abused its discretion by excluding evidence of previous incidents between plaintiffs and the City Council. We disagree. The incidents, if they were ever actionable, had become barred by limitations. Plaintiffs contend that the incidents nevertheless would have provided back-

---

**6.** The same narrowing construction defeats the plaintiffs' contention that the terms "personal,

impertinent, slanderous, or profane" are unconstitutionally vague.

ground, and served to show that the City Council was engaged in a conspiracy to violate their civil rights. Their claim, however, was that they had been denied their constitutional right to speak on the three occasions set forth in the pleadings. The district judge ruled that, if no violation could be proved on those occasions, the earlier incidents added nothing to the claim. In light of the case as it was framed for the jury, without objection, the district court was correct. Whether it was reasonable for the City Council to rule plaintiffs out of order, on the ground that they had made their points, did not turn on any questions of animosity arising from earlier incidents. The district court did not abuse its discretion.

### IV. Conclusion

The decisions of the district court denying declaratory and injunctive relief, and dismissing the damages claim on the basis of the jury's verdict, are

AFFIRMED.