# FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SALVADOR REZA,

*Plaintiff-Appellant*,

v.

RUSSELL PEARCE; JEFF TRAPP; JOHN BURTON,

*Defendants-Appellees*.

No. 13-15154

D.C. No.
2:11-cv-01170-FJM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, Senior District Judge

Argued and Submitted
March 12, 2015—San Francisco, CA

Filed August 18, 2015
Amended November 19, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.,
and Paul J. Watford, Circuit Judges.

Order;
Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Wallace

# SUMMARY[*]

## Civil Rights

The panel denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the court, and amended the opinion filed on August 18, 2015, appearing at 798 F.3d 881 (9th Cir. 2015).

The panel reversed the district court's summary judgment in favor of Arizona State Senator Pearce and affirmed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of claims against police officers in plaintiff's action alleging that: (1) Senator Pearce violated plaintiff's constitutional rights when he ordered plaintiff removed, and barred, from the Arizona Senate building; and (2) police officers violated plaintiff's rights when they prevented plaintiff from entering the Senate building and ultimately arrested him.

The panel first held that the Senate building was a limited public forum. The panel determined that although Senator Pearce's restrictions on plaintiff, which attempted to preserve the ability of the Senate to hold uninterrupted legislative hearings, were viewpoint neutral, there were material issues of disputed fact concerning whether plaintiff actually disrupted the proceedings, and whether Senator Pearce had legitimate concerns that, if plaintiff were allowed into the Senate building in the future, he would interrupt legislative debate. The panel concluded that, viewing the evidence in the light most favorable to plaintiff, the non-moving party,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Senator Pearce violated plaintiff's clearly established First Amendment rights and that the district court erred by granting him qualified immunity on summary judgment. The panel remanded for further proceedings.

The panel held that the district court did not err in granting the police officers' motion to dismiss the claims against them on qualified immunity grounds because the officers arrested plaintiff for criminal trespass pursuant to a facially-valid order issued by Senator Pearce.

The panel further held that the district court did not abuse its discretion in granting Senator Pearce's Motion for Protective Order, which prevented plaintiff from questioning Senator Pearce about his acquaintance with J.T. Ready, a purported white supremacist.

Concurring in part and dissenting in part, Judge Wallace would hold that Senator Pearce is entitled to qualified immunity and he would affirm the summary judgment in his favor.

---

## COUNSEL

Stephen Montoya (argued), Montoya, Jimenez, and Pastor, P.A., Phoenix, Arizona, for Plaintiff-Appellant.

Loren R. Ungar (argued), Rose Law Group, PC, Scottsdale, Arizona, for Defendant-Appellee Russell Pearce.

Sandra Slaton (argued), Slaton & Sannes, P.C., Scottsdale, Arizona, for Defendant-Appellee John Burton.

Luane Rosen (argued), Charles D. Onofry, Schneider & Onofry, P.C., Phoenix, Arizona, for Defendant-Appellee Jeff Trapp.

## ORDER

The panel has voted to deny the petition for panel rehearing. Judges Smith and Watford voted to deny the petition for rehearing en banc, and Judge Wallace so recommends. The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on en banc rehearing. *See* Fed. R. App. P. 35(f). The petition for panel rehearing and the petition for rehearing en banc are **DENIED**. The court's opinion and the dissent filed August 18, 2015, and appearing at 798 F.3d 881 (9th Cir. 2015), are hereby amended. An amended opinion and dissent are filed herewith. No further petitions for rehearing or rehearing en banc may be filed.

## OPINION

M. SMITH, Circuit Judge:

In this § 1983 action, Salvador Reza alleges that Arizona State Senator Russell Pearce violated his constitutional rights when he ordered Reza removed, and barred, from the Arizona Senate building (the Building) at the state capital. Reza contends that Senator Pearce targeted him because of his public criticism of the senator, and because of Reza's Mexican heritage. Senator Pearce responds that he was justified in barring Reza from the Building because Reza disrupted Senate proceedings, and because he believed Reza

would interrupt Senate proceedings in the future. The district court granted summary judgment to Senator Pearce on qualified immunity grounds because it concluded that Pearce had "an objectively reasonable basis . . . to conclude that action needed to be taken to protect and preserve safety and decorum," and that if Reza "was mistakenly targeted as a disruptive member of the crowd" that such a mistake could not violate the First Amendment. The district court assumed that if such a mistake was made, then it did not violate clearly established law to bar Reza from the building in the future based on a fear of future disturbances.

Reza also alleges that officers Jeff Trapp and John Burton violated his rights under the First and Fourth Amendments by preventing Reza from entering the Building, and ultimately arresting him. Reza challenges the district court's order granting Rule 12(b)(6) motions to dismiss his claims against Trapp and Burton on qualified immunity grounds.

Finally, Reza challenges a protective order granted by the district court that prevented him from obtaining evidence concerning Senator Pearce's relationship with J.T. Ready, a white supremacist leader.

We reverse the district court's decision to grant summary judgment to Senator Pearce, and remand for further proceedings consistent with this opinion. Based on our review of the record, we find several disputed issues of material fact that affect our determination of whether Senator Pearce violated Reza's First Amendment rights. Thus, when we resolve factual disputes in favor of Reza's version of events, as required on a motion for summary judgment, we conclude that Senator Pearce's alleged conduct violated our circuit's clearly established First Amendment law. We affirm

the district court's rulings regarding officers Trapp and Burton, and its protective order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Factual Background

#### A. The Alleged Disruption of the Arizona Senate Debate

Salvador Reza is a member of Tonatierra, a community development organization that seeks to protect the rights of migrant workers and their families. On February 22, 2011, Reza attended a legislative hearing at the Building concerning the Omnibus Immigration Bill, a state immigration law.

The hearing on the Omnibus Immigration Bill attracted significant public attention. Because of the number of people already in the Building when Reza and other supporters of Tonatierra arrived, he and those supporters were unable to sit in the room where the Senate hearing was held. Instead, Reza sat in an overflow room, where people could view a broadcast of the Senate hearing proceedings. Both opponents and supporters of the proposed legislation applauded and booed in the overflow room during the course of the hearing.

Senator Pearce claims that, near the end of the day's proceedings, noise from the overflow room began to interfere with legislative debate. At this time, Officer John Burton approached Reza and asked him to try to silence the audience. Reza refused to do so and, when the officer said he might have to detain some protestors if they kept loudly clapping, Reza allegedly said "do what you have to do." In his deposition, Officer Burton states that Reza was

confrontational and challenged the officer by saying, "Go ahead, throw me out."

Around 10:00 pm, Sergeant-at-Arms Joe Kubacki entered the overflow room and told the crowd to stop applauding, because the noise was violating the Senate's rules of decorum. In his deposition, he states that some members of the audience, including Reza, started applauding even louder.

Kubacki reported this incident to Senator Pearce. Senator Pearce was the president of the Senate at that time, and had authority to maintain decorum for the Senate. In his affidavit, Senator Pearce claims that, in the aftermath of a recent shooting at an event held by Congresswoman Gabrielle Giffords, public officials were "on edge" and "nervous," and were particularly concerned about potential violence at protests. Earlier that day, police had arrested four protestors at a press conference held by State Senator Krysten Sinema. When Senator Pearce asked Kubacki how to handle the protestors in the overflow room, Kubacki apparently advised that, since the legislative hearing appeared to be concluding, it would be better to try to limit disturbances in the short term and not arrest any protestors or attempt to remove them from the Building.

Senator Steve Gallardo, who attended the Omnibus Immigration Bill hearing, submitted an affidavit stating that: "I never saw Mr. Reza engage in any disruptive behavior at the Arizona State Senate on February 22, 2011 or at any other time . . . Nor did I ever observe anyone either disrupt or interrupt the public hearing before the Appropriations Committee on February 22, 2011." Others attending the hearing have supported Senator Gallardo's affidavit. For instance, Jason Odhner, an individual who was seated in the

overflow room during the hearing, testified that, "[d]uring the entire time that I was at the Senate building on that occasion, I never saw Mr. Reza engage in any type of disruptive or disrespectful behavior."

## B.  Senator Pearce's Ban of Salvador Reza

After the Omnibus Immigration Bill hearing concluded, Senator Pearce approached Officer Jeff Trapp and asked him to identify those who had been protesting loudly in the overflow room. Senator Pearce directed Officer Trapp to deny entrance into the Building to those he identified, due to their disorderly and disruptive behavior. The officers identified Reza as one of the individuals who had disrupted the Senate hearing, and therefore planned to bar Reza from entering the Building.

## C.  Reza's Arrest

On February 24, 2011, Reza tried to enter the Building for the purpose of meeting with Senator Gallardo to discuss obtaining a permit for future protests. At that time, Officers Trapp and Burton told Reza that he was not permitted inside the Building because of his disorderly and disruptive behavior during the Omnibus Immigration Bill hearing. When Reza nonetheless tried to enter the Building, the two officers arrested Reza and took him to a holding room in the Building. Reza was eventually arrested for trespassing and transferred to the Maricopa County Jail, where he remained for approximately five hours.

### D. Press Release and New Rules Governing Senate

On February 25, 2011, Senator Pearce issued a press release concerning the February 22 protest and the purported disruption he claimed had occurred. Senator Pearce's press release discussed the tense environment in Arizona after a fatal shooting at an event hosted by Representative Giffords, and the protest at the speech by Senator Sinema. On March 14, 2011, Senator Pearce issued new rules concerning public interruptions of proceedings in the Arizona Senate. Under the new rules, first time violators would be excluded from the Building for two weeks; subsequent violators would be excluded for 60 days.

## II. Prior Proceedings

On June 13, 2011, Reza filed this § 1983 action, alleging that Senator Pearce violated his First Amendment rights by barring him from the Building generally, and specifically by preventing him from entering the Building to attend a meeting with Senator Gallardo on February 24, 2011. Reza alleges that Senator Pearce targeted him because of his Mexican ancestry and his public criticism of Senator Pearce. Reza also filed separate § 1983 actions against Officers Trapp and Burton for arresting him, and preventing him from entering the Building on February 24, 2011.

The district court granted summary judgment to Senator Pearce, concluding that the senator was protected by qualified immunity. The district court also granted motions to dismiss filed by Officers Trapp and John Burton. In addition, the district court granted a protective order preventing Reza from obtaining evidence concerning Senator Pearce's relationship with J.T. Ready, a white supremacist leader.

This timely appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review de novo the district court's decision to grant summary judgment to Senator Pearce on qualified immunity grounds, considering disputed material facts in the light most favorable to Reza, the non-moving party. *See Garcia v. Cnty. Of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011). We also review de novo the district court's decision to dismiss the claims against Officers Trapp and Burton for failure to state a claim on which relief can be granted. *See Dunn v. Castro*, 621 F.3d 1196, 1198 (9th Cir. 2010).

## DISCUSSION

## I.  Senator Pearce's Qualified Immunity

Reza contends that Senator Pearce violated his First Amendment rights when he barred him from entering the Building. The district court granted summary judgment to Senator Pearce, concluding that because Reza did not allege a First Amendment violation, Senator Pearce was entitled to qualified immunity.

We reverse the district court's decision and remand for further proceedings consistent with this opinion. To overcome Senator Pearce's qualified immunity defense, Reza must establish both that Senator Pearce violated his First Amendment rights, and that this violation was of a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Pearson v. Callahan*,

555 U.S. 223, 231 (2009). We find several material issues of disputed fact that, if resolved in favor of Reza's version of events, would show that Senator Pearce's conduct violated clearly established First Amendment law. Therefore, the district court erred in granting summary judgment to Senator Pearce.

### A.  Was There A First Amendment Violation?

### 1.  Forum

We begin by determining what kind of forum the Building is because the type and scope of restrictions the government may place on speech depends on where the speech occurs. *See White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990). Federal courts have generally recognized three categories of public fora: (1) traditional public fora; (2) designated public fora; and (3) limited public fora. Traditional public fora are areas historically used by the public for assembly, such as sidewalks and parks. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983). Designated public fora are those where "the government intentionally opens a nontraditional forum for public discourse." *DiLoreto v. Downey Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958, 964 (9th Cir. 1999). Limited public fora are public property "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2010).

Although Reza contends that the Building is a public forum, it is more specifically a limited public forum. We have held that city council meetings, where the public has the opportunity to address officers of a local government or local

governmental agency, are limited public fora. *White*, 900 F.2d at 1425. Much like a city council meeting, which is a "governmental process with a governmental purpose," *id.*, the hearing on the Omnibus Immigration Bill involved proceedings concerning the possible enactment of a public law by a governmental institution.

The fact that Reza was only a member of the audience, and not an individual addressing the Senate hearing, has no bearing on the nature of the forum. Put another way, unlike the plaintiffs in *White*, who were addressing the limited forum as part of the city council proceedings themselves, Reza was not testifying before the Senate. The disputed speech involved Reza's reactions to proceedings being held in the Building. At bottom, however, "[a] limited public forum is a limited public forum." *Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010). Restrictions on the speech of spectators in a limited public forum are subject to the same constitutional rules that apply to those addressing the chamber. *Id*.

### 2.  Legal Standard in a Limited Public Forum

We have recognized that, in order to safeguard the purpose of a limited public forum, the government may restrict speech in that forum. *See White*, 900 F.2d at 1426. "In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46. *See also Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995) ("The fact remains that limitations on speech at those meetings must be

reasonable and viewpoint neutral, but that is all they need to be.").

Although we conclude below that Senator Pearce's restrictions on Reza, which attempted to preserve the ability of the Senate to hold uninterrupted legislative hearings, were viewpoint neutral, there are material issues of disputed fact concerning whether Reza actually disrupted the proceedings, and whether Senator Pearce had legitimate concerns that, if Reza were allowed into the Building in the future, he would interrupt legislative debate. These factual issues affect our analysis concerning the reasonableness of the restrictions placed on Reza.

### 3.  Viewpoint Neutrality

Reza contends that Senator Pearce targeted him because of his Mexican ethnicity, and because he had strongly articulated his opposition to Pearce's immigration legislation. The  record in this case does not support these contentions. So far as revealed by the record, Senator Pearce simply ordered state Senate officers to identify people who were being loud in the overflow room. After the officers designated Reza as one of these individuals, they obtained public domain photographs of Reza, which allowed them to identify him in the future, and bar him from the Building. Senator Pearce subsequently issued a press release stating that individuals who had been identified as disrupting Senate proceedings would not be allowed inside the Building for a period of two weeks, and in case of multiple disruptions, for a period of 60 days.

It may be that opponents of the Omnibus Immigration Bill outnumbered supporters of that bill in the overflow room, and

that the ban on individuals who had allegedly disrupted the Senate hearing disproportionately impacted opponents of the bill. Nevertheless, the record indicates that Senator Pearce's ban on Reza resulted from a neutral policy that was implemented because some in the Senate hearing room claimed that they had been disturbed by noise emanating from the overflow room.

### 4.  Disputed Facts As To Reasonableness

A restriction on expressive conduct in a limited forum must be "reasonable in light of the purpose served by the forum . . . ." *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999). *See also Preminger v. Peake*, 552 F.3d 757, 765 (9th Cir. 2008). We permit restrictions to maintain decorum and order in a proceeding. *See Kindt*, 67 F.3d at 271.

There is a factual dispute as to whether Reza's speech in the overflow room actually disrupted the hearing regarding the Omnibus Immigration Bill, and whether Senator Pearce was legitimately concerned that, if Reza were allowed into the Building in the future, he would interrupt legislative debate. Some claim that Reza's actions interfered with the Senate hearing on the Omnibus Immigration Bill, which prevented the Senate from finishing its business. For example, Officer Burton testified that he asked Reza to keep his voice down: "I spoke to Mr. Reza and instructed him that it was getting loud, that I didn't want the senators to become upset and ask[] to have people thrown out. Mr. Reza told me, 'Go ahead[;] throw me out." Others, including Senator Gallardo, claim that Reza did not do anything to disrupt the Senate hearing. They contend that Reza only applauded loudly.

Senator Pearce was entitled to rely on information provided to him by Senate officers that identified Reza as an individual who was disrupting debate. However, at least one officer clearly told the senator that there was no reason to remove any audience members from the Senate building, Reza included, during the Senate debate, although that may have been a tactical decision, rather than an evaluation of whether there had been any disruption. More importantly, it is uncontroverted that Senate proceedings continued for the duration of the Omnibus Immigration Bill protest, a fact that the senator knew firsthand. This meant that, drawing all reasonable inferences in favor of the non-moving party, any purported protest never actually disrupted Senate proceedings. It was only two days after the hearing concluded that Senator Pearce ordered Reza barred from the Building.

In a limited public forum, our inquiry into the reasonableness of restrictions takes into account whether the restrictions imposed leave open alternative channels of communication. In *Kindt*, we considered rules governing the manner in which members of the public could address a rent control board during a hearing in a limited public forum. 67 F.3d at 271. We determined that there was no First Amendment violation because although the plaintiff was required to comply with the rules of the rent control board, the plaintiff still retained the ability to express himself. *Id.* In the present case, however, Senator Pearce completely barred Reza from entering the Building, which ultimately prevented Reza from meeting with an elected senator. Senator Pearce's solution, imposing a complete bar on Reza's entry into the Building, clearly exceeds the bounds of reasonableness clearly established by *White*, *Kindt*, and *Norse* as a response to a single act of disruption, for the reasons explained in the next section. Senator Pearce initially imposed an indefinite

bar on Reza and later promulgated regulations that limited the bar on disruptive individuals to two weeks for first time offenders, although it is unclear if these regulations modified the indefinite bar applicable to Reza.

As president of the Senate, Senator Pearce did have the power to maintain order and decorum in the Senate proceeding. Even if we acknowledge the senator's authority to bar disruptive individuals from Senate debates, we still encounter factual disputes concerning whether Reza interrupted Senate proceedings, and whether Senator Pearce was justified in determining that Reza would interfere with Senate proceedings in the future. We have held that "[w]hen a respondent to a motion for summary judgment submits proper affidavits by individuals with personal knowledge and other cognizable and significantly probative evidence, such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor, the judge must treat that fact as genuinely at issue." *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999).

The affidavits and testimony submitted by Reza raise triable issues of material fact. *See Norse*, 629 F.3d at 973 (reversing summary judgment to Mayor where citizen "wanted to call attendees of the Council meetings as witnesses to testify about whether Norse actually disrupted them"). We thus conclude that it was error for the district court to grant summary judgment to Senator Pearce on the ground that Reza had not shown a First Amendment violation.

**B. Was the First Amendment Violation Clearly Established?**

We further conclude that, based on the second prong of the qualified immunity test, viewing the evidence in the light most favorable to Reza, the non-moving party, *Foster v. Runnels*, 554 F.3d 807, 811 (9th Cir. 2009), Senator Pearce's actions violated Reza's clearly established First Amendment rights. *See Pearson*, 555 U.S. at 231; *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009).

### 1.  Meaning of "Clearly Established"

A right is clearly established if it was "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). *See also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "If the law does not 'put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" *Foster*, 554 F.3d at 815 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

We note, however, that the Supreme Court does "not require a case directly on point." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). Instead, existing precedent must have placed the constitutional question beyond debate. *Id*. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Ultimately, the "clearly established" prong of the qualified immunity test shows deference towards the actions of government officials, but does not shield individuals who are "plainly incompetent or

those who knowingly violate the law." *Taylor*, 135 S. Ct. at 2044.

### 2. Ninth Circuit Law at the Time of Senator Pearce's Conduct

On February 22, 2011, the date of the Omnibus Immigration Bill hearing, clearly established law held that an individual could express disagreement in a limited public forum, but that the government could restrict the individual's speech to safeguard the purpose of the forum, as long as the restrictions were reasonable and viewpoint neutral. *See Norse*, 629 F.3d at 975. Our circuit's case law also unambiguously held that a government official could remove an individual from a limited public forum only if the individual had actually disrupted proceedings. *Id*.

In evaluating the question of qualified immunity, we must be careful not to define "clearly established" at a "high level of generality." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015). No such high level of generality is at issue here. *Norse*, an en banc decision from the year before the incident at issue, was emphatic that actual disruption was required to eject a person from a limited public forum, and that the defendant "cannot define disruption so as to include non-disruption." 629 F.3d at 976. "Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption." *Id. Norse* reaffirmed the fundamental principle that the government can remove an individual from a limited public forum only if the individual actually disrupts the proceedings. No cases, in the Ninth Circuit or otherwise, even remotely suggest that *Norse*'s principle can be inverted to

indefinitely ban an individual from a government building based on a single disruption of a hearing.

In *White*, for example, we considered a facial challenge to a city ordinance that authorized a city council to remove individuals from hearings if they made "personal, impertinent, slanderous or profane remarks." 900 F.2d at 1424. We upheld the city ordinance, but only because it authorized removal when an attendee "disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting." *Id.* at 1426.

In *Kindt*, we analyzed a First Amendment challenge regarding an individual's multiple removals from a rent control board's meetings. 67 F.3d at 268. We concluded that the board's ejection of the individual had been valid under the First Amendment. The individual had actually disrupted rent control meetings by speaking out of order and yelling at the board during proceedings. *Id*. at 268–69.

Thus, nothing in our caselaw suggests that Pearce could have reasonably believed that he could violate *Norse* and instead bar Reza from the building at a time when it is undisputed that he was not being disruptive: when he went to meet with Senator Gallardo a few days after the hearing on the Omnibus Immigration Bill.

### 3. Factors Considered in the Present Case

In the case before us, the senator never ordered that Reza be removed from the overflow room during the Senate hearing on the Omnibus Immigration Bill. Senate proceedings continued uninterrupted during the alleged protest. Despite Senator Pearce having knowledge of all these facts, two days

after the Omnibus Immigration Bill hearing, he decided to ban Reza from the Building altogether. The effect of the ban was thus to exclude Reza not simply from all future hearings related to the Omnibus Immigration Bill, but from all future hearings on any subject, based on the purported fear that he could be disruptive in the future.

In addition, because the Building housed the legislative offices of all members of the Arizona Senate, the ban precluded Reza from visiting his elected representatives to urge legislative action on any subject. Indeed, the ban ultimately resulted in Reza's arrest when he attempted to visit a state senator with whom he had arranged a meeting.

We also evaluate the asserted public safety concern. Senator Pearce correctly urges that "the interest in keeping a government building accessible and safe is both legitimate and significant." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir. 2002), *abrogated on other grounds by Winter v. Nat. Res. Def. Council*., 129 S. Ct. 365 (2008).

However, mindful of the summary judgment context, we are not persuaded by the senator's public safety rationale for his restrictions on Reza. At the time of the challenged conduct, our First Amendment doctrine had clearly held that safety concerns of the type Senator Pearce raises here must be supported by the record. *See id.* Pursuant to this case law, we review the record to determine if it "show[s] that the asserted risks were real." *Id.* at 967. We also determine whether the First Amendment restrictions at issue serve the government's public safety interest, although we do not apply a least restrictive means test. "The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need

not be the most reasonable or the only reasonable limitation." *Cornelius v. NAACP Legal Def. And Educ. Fund Inc.*, 473 U.S. 788, 808 (1985).

Here, the senator did not submit sufficient evidence showing that Reza posed a threat to the public safety. Instead, the senator asks us to infer that it was reasonable to believe that Reza was a threat based only on the tense environment that existed in Arizona at the time of the protest. At summary judgment, we are required to draw the opposite inference, since Reza is the non-moving party. Further, Senator Pearce took an extreme action, barring Reza from the Senate building completely. It is unclear how Pearce could have reasonably believed that Reza posed a risk that could justify such a ban.

We thus conclude that, when genuine disputes of fact are resolved in Reza's favor, Senator Pearce violated Reza's clearly established First Amendment rights and that the district court erred by granting summary judgment to Senator Pearce.

## II. Officers' Qualified Immunity

Reza also contends that Officers Jeff Trapp and John Burton violated his constitutional rights by preventing him from entering the Building, and by subsequently arresting him. The officers respond that they are entitled to qualified immunity, because they were complying with a facially-valid order from Senator Pearce to exclude Reza, and because they had probable cause to arrest Reza.

We hold that the district court did not err in granting the officers' motion to dismiss on qualified immunity grounds,

because they arrested Reza for criminal trespass pursuant to a facially-valid order issued by Senator Pearce.

In Arizona, a person commits criminal trespass in the third degree by "[k]nowingly entering or remaining unlawfully on any real property after a reasonable request to leave by the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry." A.R.S. 13-1502(A)(1). An officer is "entitled to qualified immunity on a false arrest claim if a reasonable officer in his position could have believed that probable cause existed." *Norse*, 629 F.3d at 978.

Senator Pearce issued the order to exclude Reza pursuant to his authority as President of the State Senate. Rule 2(B) of the Arizona Senate Rules states that the Senate President "shall have control of the Senate Chamber . . . all other parts of the Senate wing and all other areas and buildings used exclusively by the Senate." Rule 2(C) states that the President "shall preserve and maintain order and decorum."

Thus, Senator Pearce's order was facially valid. Perhaps the substantive legitimacy of Senator Pearce's order could be challenged, but not in a lawsuit against the officers. "[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Furthermore, Reza concedes that he continued his attempt to walk into the Building to meet with Senator Gallardo, after being told by the officers that he could not enter the Building. Under the circumstances, Reza's attempted entry was an act of trespass under Arizona law, and

the officers had probable cause to arrest Reza based on Senator Pearce's facially-valid order.

## III.    Questions Concerning J.T. Ready

Reza also claims that the district court erred in granting Senator Pearce's Motion for Protective Order, which prevented Reza from questioning Senator Pearce about his acquaintance with J.T. Ready, a purported white supremacist.

Discovery normally must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Even if discovery is relevant, however, a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). We review the district court's decision to enter the protective order for an abuse of discretion. *See Preminger*, 552 F.3d at 768 n.10.

It is unclear from the record whether information relating to J.T. Ready would have led to the discovery of admissible evidence. The only relevant issue related to Senator Pearce's alleged friendship with J.T. Ready is the senator's purported discrimination against Reza based on Reza's Mexican ancestry. However, Reza had already discovered public information concerning the purported friendship between Senator Pearce and J.T. Ready. This public information diminishes the probative value of additional questions concerning the alleged friendship. The district court concluded that "[i]f defendant associated with a Neo-Nazi murderer, details about this relationship may make it slightly more likely that defendant himself was racist." Nevertheless, the court determined that "it is highly likely that the evidence would be excluded under Federal Rule of Evidence 403." In

light of the discretion entrusted to district judges in applying Federal Rule of Evidence 403, the district court did not abuse its discretion in granting the protective order.

## IV.    Conclusion

We reverse the district court's decision to grant summary judgment to Senator Pearce and remand for further proceedings consistent with this opinion. We affirm the district court's rulings regarding officers Trapp and Burton, and its protective order.

Each party shall bear its own costs on appeal.

**REVERSED AND REMANDED IN PART. AFFIRMED IN PART.**

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I dissent from Part I of the majority opinion, which incorrectly holds that Senator Pearce "violated Reza's clearly established First Amendment rights." Opinion p. 17. The Supreme Court has repeatedly cautioned courts—and our circuit in particular—"not [to] define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011); *see also City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1778 (2015) (reversing our circuit's decision on the basis that the officers were entitled to qualified immunity); *Lopez v. Smith*, 135 S. Ct. 1, 6 (2014) (per curiam) (reversing our circuit's decision and cautioning us against "framing our precedents at such a high level of

generality" (internal quotation marks omitted)). Rather than correct the course, as directed by the Supreme Court, in this case, the majority continues in the wrong direction and I therefore dissent.

To recover under 42 U.S.C. § 1983 Reza must show (1) that Senator Pearce violated one of Reza's statutory or constitutional rights, and (2) that the right "was clearly established at the time of the challenged conduct." *Plumhoff*, 134 S. Ct. 2012, 2023 (2012) (internal quotation marks omitted). As the Supreme Court recently explained, the "clearly established" standard is not easily overcome: "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *Sheehan*, 135 S. Ct. at 1774, quoting *Ashcroft*, 131 S. Ct. at 2083. Qualified immunity, "[w]hen properly applied, . . . protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 131 S. Ct. at 2085 (internal quotation marks omitted).

As the majority recognizes, the Senate Building is a limited public forum. Opinion p. 11. Therefore, the government could restrict speech in the building so long as any "regulation on speech [was] reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). The majority correctly concludes that "Senator Pearce's ban on Reza resulted from a neutral policy." Opinion p. 14. But it fails to recognize the reasonableness of Senator Pearce's actions given the circumstances he faced. As the majority concedes,

"Senator Pearce was entitled to rely on information provided to him by Senate officers that identified Reza as an individual who was disrupting debate." Opinion p. 15. And although at least one officer told Senator Pearce that there was no reason to immediately remove anyone from the building (perhaps because doing so would have emboldened the disruptors and created an even greater disturbance), that does not change the fact that multiple other officers told the senator that Reza caused an actual disturbance. Moreover, Senator Pearce's order was a response to the tense atmosphere created by the recent shooting in Tucson in which a federal judge was murdered, and the fact that state senators expressed fear for their safety as a result of a disruption that morning at one senator's press conference. The majority's discussion of reasonableness makes no mention of any of these surrounding circumstances. This omission ignores our case law requiring that we judge reasonableness "in light of the purpose of the forum and *all of the surrounding circumstances*." *Premigner v. Peake*, 552 F.3d 757, 765 (9th Cir. 2008) (internal quotation marks omitted) (emphasis added). In my view, in light of the purpose of the forum, to conduct legislative business, the surrounding circumstances, and the information the senator received from his officers, the senator's ban (subsequently limited to two weeks) on alleged disruptors was reasonable and therefore did not violate the First Amendment.

But we need not even reach the question of whether Senator Pearce actually violated First Amendment law in this case by relying, as he could, on reports given to him by officers assigned to keep order, because there is no doubt that the senator did not violate "clearly established" law at the time of the challenged conduct. At that time, not a single Supreme Court decision clearly established the right Reza

now asserts. Implicitly acknowledging this fact, the majority focuses solely on Ninth Circuit law. Opinion p. 18–19. After reviewing our law at the time, the majority concludes that "[n]o cases, in the Ninth Circuit or otherwise, even remotely suggest that *Norse*'s principle can be inverted to indefinitely ban an individual from a government building based on a single disruption of a hearing." Opinion p. 18–19. But this answers the wrong question and is ultimately a red herring. The fact that no cases affirmatively *permitted* an official to ban an individual from a government building based on a single disruption (the majority's conclusion) is irrelevant for purposes of qualified immunity. Instead, the relevant question is whether any case expressly *prohibited* an official from banning an individual from a government building for a single disruption. None of our cases at the time of the hearing in question answered that question.

In *White*, we upheld a city ordinance that allowed removal of individuals from a city council hearing if they made "personal, impertinent, slanderous or profane remarks." *White v. City of Norwalk*, 900 F.2d 1421, 1424 (9th Cir. 1990). The case says nothing regarding whether a government official can bar a person from future hearings for causing an actual disruption. We reinforced this rule in *Kindt*. There we upheld a rent control board's decision to remove an individual from a meeting because of an actual disruption. *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 272–73 (9th Cir. 1995). Again, the case says nothing about banning a person from future meetings where they caused an actual disruption. Last, in *Norse*, we held that rules of decorum are not facially overbroad if they limit the ability of government officers to eject individuals for actually disturbing a meeting. *Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010). Here again, the case says nothing about whether an official can ban

an individual from future meetings as a result of an actual disruption.

Maybe Senator Pearce made a mistake in banning Reza from the senate building. Perhaps the First Amendment should prohibit such a ban. But neither view should make any difference in this case because at the time of the challenged conduct Senator Pearce did not violate any "clearly established" right. On this basis, I would hold that Senator Pearce is entitled to qualified immunity and would affirm the district court's summary judgment in his favor. The majority's holding to the contrary continues our unfortunate ignoring of the Supreme Court's repeated caution to avoid defining clearly established law at a high level of generality." *Ashcroft*, 131 S. Ct. at 2084. I therefore dissent from the holding reversing the district court's summary judgment in favor of Senator Pearce but concur in the remainder of the majority opinion.