**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1191
_____

BENNIE ANDERSON,
                                        Appellant

v.

WARDEN OF BERKS COUNTY PRISON;
MR. JOE HERMAN (COUNSELOR)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5-13-cv-00903)
District Judge:  Honorable Timothy J. Savage
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 20, 2015

Before:  CHAGARES, JORDAN and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: February 25, 2015)

_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Bennie Anderson, a Pennsylvania state prisoner, appeals the District Court's order granting summary judgment to the defendants. We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. See Camp v. Brennan, 219 F.3d 279, 280 (3d Cir. 2000). For the reasons detailed below, we will affirm in part, vacate in part, and remand.

Anderson is serving a life sentence for murder. For most of the 15 years that he has been incarcerated, he has been held at SCI-Huntington. On July 25, 2012, he was temporarily transferred to the Berks County Jail ("the Jail"), via a writ of habeas corpus ad testificandum, to testify under subpoena for the defense in an unrelated capital murder case, Commonwealth v. Williams, which was proceeding in the Berks County Court of Common Pleas. Anderson was discharged back to SCI-Huntington on August 22, 2012.

According to Anderson, the staff at the Jail — including defendants George Wagner (the Jail's warden) and Joseph Herman (a caseworker at the Jail) — singled him out for negative treatment. Anderson says that many Jail employees had been friends with the victim in Commonwealth v. Williams, and they sought to prevent him from testifying. Anderson claims that he was served only unappetizing nutraloaf to eat, placed in a cold cell, denied a blanket and mattress during the day, provided with lighting for only three hours a day, had his sleep disrupted, and was threatened by guards. A mistrial was declared in Commonwealth v. Williams before Anderson was required to testify, and he was returned to SCI-Huntington after less than a month in the Jail.

After proceedings not relevant here, in 2013, Anderson filed an amended

2

complaint against Wagner and Herman under 42 U.S.C. § 1983. Anderson alleged that the defendants, by exposing him to the conditions described above, violated his Eighth Amendment right to be free from cruel and unusual punishment and retaliated against him in violation of his First Amendment rights. The defendants moved for summary judgment, and the District Court granted their motion. Anderson then filed a timely notice of appeal to this Court.

We agree with the District Court's disposition of Anderson's Eighth Amendment claims. In order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that is "objectively, sufficiently serious," such that he was denied "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of the defendant official. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted). Anderson has failed to make the necessary showing to survive summary judgment.

First, as the District Court stressed, Anderson has complained that nutraloaf is "disgusting," but has not alleged that it is unhealthful or caused him to suffer any side effects. Therefore, in this case, "a temporary Nutraloaf diet does not deny the minimal civilized measure of life's necessities, [and] its use [thus] falls short of the threshold deprivation necessary to form the basis of an Eighth Amendment violation." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). Further, while Anderson avers that the light in his cell was illuminated for just three hours each evening, he has not challenged the defendants' evidence that his cell had a window that let in sufficient natural light during

3

the day.  See Peterkin v. Jeffes, 855 F.2d 1021, 1026-27 (3d Cir. 1988).  We likewise

agree with the District Court that Anderson was not subjected to cruel and unusual

punishment when his mattress was removed during the day (and returned at night).  See

Franklin v. Lockhart, 883 F.2d 654, 654-55, 657 (8th Cir. 1989); see generally Peterkin,

855 F.2d at 1027.

The District Court also correctly granted judgment to the defendants on

Anderson's claim concerning his cell's temperature.  While he complains that it was cold,

he presented no evidence (or even allegations) establishing the "severity of the cold."

Dixon v. Godinez, 114 F.3d 640, 644 (7th Cir. 1997).  The defendants have shown that

the entire prison was cooled during the summer (the period relevant here) by central air

conditioning, that all the cells were the same temperature, and that no other prisoners

complained.  Further, Anderson acknowledges that he was given a blanket at night, which

is when he says his cell was the coldest.  In these circumstances, Anderson's conclusory

statement that his cell was cold is insufficient to withstand summary judgment.  See

Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009); cf.

Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir. 1988) (reversing summary judgment in

favor of prison officials where the inmate alleged that he was exposed temperatures so

cold that ice formed in the toilet bowl of his cell).[1]

We will, however, vacate the District Court's judgment as to Anderson's

retaliation claim.  To establish a claim of retaliation under the First Amendment,

---

[1] Anderson also complained about numerous other conditions; we agree with the District
Court's analysis of those issues.

4

Anderson must show that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001). The District Court concluded that Anderson's claim failed because he did not actually testify in Commonwealth v. Williams, and because he was "treated as any other prisoner serving a life sentence." Each of those conclusions is problematic.

First, we have held that an individual has a First Amendment right to respond to a subpoena and testify in a third party's case. See Pro v. Donatucci, 81 F.3d 1283, 1290 (3d Cir. 1996). This right extends to prisoners like Anderson. See Cornell v. Woods, 69 F.3d 1383, 1388 (8th Cir. 1995); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988). While a mistrial was declared in the trial before Anderson was called to testify, we have concluded that the First Amendment protects an individual's "interest in responding to a subpoena," even when the individual does not actually testify. Pro, 81 F.3d at 1291; see also Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 125 (2d Cir. 2005). Thus, accepting the facts as he presented them, Anderson engaged in constitutionally protected conduct.

Second, while the defendants have claimed that they treated Anderson just like any other prisoner who is serving a life sentence, he presented evidence to the contrary. In his affidavit, he stated that he was harassed by guards throughout the night; had his mattress, pillow, and blanket removed each day; was fed nutraloaf three times a day; and

5

was subjected to various other privations.[2]  The documents in the record reveal that inmates of Anderson's classification — "modified security status" — were not typically treated this way.

More specifically, in light of his classification, Anderson was supposed to receive, among other things, "regular meals" (i.e., not solely nutraloaf) and his "mattress all day." Supplemental Appendix (SA) 144; see also SA 117 (Warden Wagner's answers to interrogatories); SA 150 (Jail's confinement sheet); SA 162 (Jail's review log). Anderson stated, in his affidavit, that he received neither.  Further, Anderson asserted that the guards banged on his cell door and threatened him each night, thus constantly interrupting his sleep.  Moreover, Anderson explicitly linked this treatment to his exercise of his First Amendment rights, claiming that the guards immediately identified him as a witness in Commonwealth v. Williams and then repeatedly threatened to assault him if he testified.  See Rauser, 241 F.3d at 334.  Thus, at the summary-judgment stage, the District Court erred in rejecting Anderson's retaliation claim on the ground that he was not singled out in any way.[3]  See generally Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) ("at the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder").

---

[2] See generally Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings" (quotation marks, alterations omitted)).

[3] We stress that we express no opinion as to the ultimate merit of Anderson's retaliation claim or whether it is vulnerable to any defenses (like failure to exhaust under 42 U.S.C. § 1997e(a)).

Accordingly, we will affirm the District Court's order insofar as it granted judgment to the defendants on Anderson's Eighth Amendment claims. We will vacate the order insofar as it granted judgment to the defendants on Anderson's retaliation claim, and remand for further proceedings consistent with this opinion.