**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2200
_____

TABU N. MCCLURE, a/k/a Tabu Phillips,
Appellant

v.

COMMISSIONER JEFFREY T. HASTE; BOARD OF DAUPHIN COUNTY PRISON;
DEPUTY WARDEN D. W. CARROLL; LT. HOSTETTER; SGT. R. ADAMS
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:14-cv-02249)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2020

Before: KRAUSE, MATEY, and ROTH, Circuit Judges

(Opinion filed: July 8, 2020)
_____

OPINION*
_____

PER CURIAM

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Tabu McClure, a prisoner proceeding pro se, appeals the District Court's grant of summary judgment in favor of two of the Defendants.[1] For the reasons detailed below, we will vacate and remand.

I.

McClure brought this action under 42 U.S.C. § 1983, asserting, as relevant, a Fourteenth Amendment due-process claim against Lt. Hostetter and Deputy Warden Carroll.[2] The District Court construed the claim as an Eighth Amendment claim after concluding that McClure, as a parole violator, was the equivalent of "a convicted person punished by incarceration," rather than a pretrial detainee.[3] McClure was confined in Dauphin County Prison during the relevant events, but is now confined elsewhere.

McClure alleged the following set of facts.[4] On February 8, 2013, around 11:00 p.m., two guards told McClure to turn the light on in his cell. When he did not do so (he

---

[1] We note that the Defendants also argued below that McClure had failed to exhaust his administrative remedies. The District Court disagreed, concluding that he had properly exhausted. The Defendants have not challenged that holding on appeal.

[2] McClure's initial complaint named nine Defendants. (Dkt. No. 1). After the District Court granted the Defendants' motion to dismiss, (Dkt. Nos. 27, 28), McClure filed an amended complaint, naming five Defendants, (Dkt. No. 29). The District Court, *sua sponte*, dismissed the claims against three of the Defendants. (Dkt. No. 30). Later, the District Court granted summary judgment in favor of Lt. Hostetter and Deputy Warden Carroll. (Dkt. Nos. 99-101). On appeal, McClure challenges only the summary judgment decision. (See Appellant's Br.).

[3] McClure has not challenged this determination on appeal.

[4] These facts are from both the amended complaint, which was sworn under the penalty

2

claims the light was broke), he was written up and placed in administrative segregation. The segregation cell was very cold and he had only a t-shirt, jumpsuit bottom, and slippers. His requests for sheets, blankets, and a pillow went unanswered. After a couple of hours, he ripped the stuffing out of his mattress and crawled inside the mattress to stay warm. Around 2:00 a.m., a guard wrote him up for destroying the mattress. The write-up claimed that McClure used the stuffing from the mattress to cover up his window, which is prohibited. McClure denied doing so. McClure was then taken to a "strip cell" and put in a restraint chair until morning.

Beginning the morning of February 9, 2013, and lasting through September 3, 2013, McClure was subjected to a mattress restriction, pursuant to which his mattress was taken away during the daytime, and then returned each night. The mattress he was given each night was the one from which he had ripped the stuffing. His cell contained a concrete slab upon which he could lay the mattress at night. McClure described the mattress in his deposition:

> It was basically a shell. It wasn't really a mattress at that point. I would just call it like a shell of a mattress, that is how I described it, because the insulation inside of it didn't exist anymore. . . .

---

of perjury, and from McClure's deposition. (Dkt. Nos. 29, 89-2). The District Court stated that McClure did not follow local rules regarding the filing of a statement of material facts, but instead "filed his own statement of material facts without regard to that of Defendants." (Dkt. No. 99 at 8 n.3). However, based on our review, McClure's "Statement of Disputed Factual Issues," contained numbered paragraphs which directly corresponded to the numbered paragraph in the Defendants' "Statement of Material Facts." (Dkt. Nos. 89, 95).

> I would use my paperwork and stuff to create like a layer, keep it off the concrete, so it wouldn't be cold, so it wouldn't seep through the concrete. So I would use paper underneath or folders or books or whatever I had. I had a blanket also and I was given a full jumpsuit, so I would use some of those things.

(Dkt. No. 89-2 at 29:22-30:1; 30:15-21).

McClure had a preexisting back problem, which was exacerbated by the mattress restriction—both the nighttime issues with the defective mattress, and also not having a mattress to sit or lie on during the day. After a couple of weeks, he began to experience a substantial amount of pain in his lower back, along with sciatica and tingling and numbness in his legs. He signed up for medical treatment on several occasions, beginning around March 20, 2013, but was only given Motrin for 5-7 days each time.[5] The mattress restriction lasted over 200 days. Defendants asserted that the restriction was extended repeatedly because of McClure's behavior—such as trying to hold onto the mattress in the morning and being verbally abusive when it was taken away from him.

The mattress restriction was put in place by an order issued by Lt. Hostetter on behalf of Deputy Warden Carroll. McClure alleged that: "On numerous occasions I spoke to Lt. Hostetter about the prolonged mattress deprivation and the harm it was causing me." (Dkt. No. 29 at 60). He also alleged that he spoke to Carroll about the "mattress situation," but that Carroll said he did not have time to deal with it. (Id.). McClure also testified in his deposition as to these interactions with Lt. Hostetter and

---

[5] At one point, McClure was cut off from receiving Motrin because he was allegedly "hoarding" it. He denied doing so.

Deputy Warden Carroll. (Dkt. No. 89-2 at 27-28). The mattress restriction finally ended when McClure left Dauphin County Prison.

The District Court granted summary judgment in favor of Lt. Hostetter and Deputy Warden Carroll. McClure timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for the Defendants. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

Summary judgment should not have been granted in favor of Lt. Hostetter and Deputy Warden Carroll. For the reasons explained below, we will vacate the grant of summary judgment and remand for further proceedings.

The Eighth Amendment prohibits deprivations suffered during incarceration "that constitute an 'unnecessary and wanton infliction of pain,' including 'those that are totally without penological justification.'" Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 372 (3d Cir. 2019) (quoting Wilson v. Seiter, 501 U.S. 294, 297, 308 (1991)). A successful Eight Amendment claim based on a prisoner's conditions of confinement has two components. "First, 'the deprivation alleged must be, objectively, sufficiently serious,' resulting in 'the denial of the minimal civilized measure of life's necessities.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). This is a totality-of-the-circumstances analysis. "Conditions . . . alone or in combination[] may deprive inmates of the minimal civilized measure of life's necessities," and "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Id. at 373-74 (quoting Wilson, 501 U.S. at 304, and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). This Court has noted that "[s]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment.'" Id. (quoting Walker v. Schult, 717 F.3d 119, 126 (2d Cir. 2013) (alteration in original)); see also Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999) ("[S]leep undoubtedly counts as one of life's basic needs.").

6

Second, a successful conditions-of-confinement claim requires a showing that a prison official has a "sufficiently culpable state of mind," *i.e.*, deliberate indifference to the inmate's health or safety. Id. (citing Farmer, 511 U.S. at 834, and Wilson, 501 U.S. at 302-03). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

We will address the deliberate-indifference requirement first. The District Court concluded that "McClure has not demonstrated that Defendants knew or were aware of a risk to his health or safety by imposing the daytime mattress restriction." (Dkt. No. 99 at 29). To the contrary, we conclude that McClure created a genuine issue of fact in this regard, given his sworn allegations in his amended complaint, and his deposition testimony, that he spoke to Lt. Hostetter on numerous occasions about the harm the mattress restriction was causing him and also tried to talk to Deputy Warden Carroll, who blew him off.[6] Accordingly, we conclude that McClure created a triable issue as to the Defendants' deliberate indifference to the harm he suffered as a result of the mattress restriction.

With regard to the mattress restriction, although the District Court correctly noted that "[t]he length of the inmate's exposure to the alleged unconstitutional conditions and

---

[6] Although the Defendants assert that McClure did not in any meaningful way cite to the evidentiary record in his "Statement of Disputed Factual Issues," McClure did in fact specifically cite the relevant page of his deposition. (Dkt. No. 95 at ¶ 30) (citing Dkt. No. 89-2 (McClure's Depo.) at 27).

the totality of the circumstances must be considered when making a determination as to whether a condition amounts to cruel and unusual punishment," (Dkt. No. 99 at 27), the District Court went on to state that "[t]he Third Circuit has concluded that an inmate is not subject to cruel and unusual punishment when he is deprived of a mattress during the day and has the mattress returned to him at night," (id. at 28). The District Court stated this latter proposition as a matter of law, suggesting it applied regardless of important factors, such as the length of the deprivation and the totality of the circumstances.

Indeed, the District Court relied exclusively on cases in which inmates were subjected to daytime mattress restrictions for significantly shorter periods of time than the 200-plus days at issue here.[7] In their appellate brief, the Defendants rely on the same cases and add one more, where the restriction lasted a week. See Jackson v. Lencovich, 2005 U.S. Dist. LEXIS 47182 (M.D. Pa. June 6, 2005). There was no indication in any of these cases that the inmates were given a defective mattress in the evenings, or that they had pre-existing back problems that were exacerbated by the mattress restriction.

Defendants also cited several cases in their appellate brief in which courts held that complete deprivations of mattresses for short periods of time did not violate the

---

[7] See Anderson v. Warden of Berks Cty. Prison, 602 F. App'x 892 (3d Cir. 2015) (per curiam) (restriction lasted less than a month); Alex v. Stalder, 225 F. App'x 313 (5th Cir. 2007) (51 days); Mestre v. Wagner, 2012 WL 300724 (E.D. Pa. Jan. 31, 2012) (13 days); Gannaway v. Berks Cty. Prison, 2011 WL 1196905 (E.D. Pa. Mar. 31, 2011) (one stretch of 15 days, one stretch of 22 days); Andrews v. Vance, 2005 WL 3307334 (M.D. Pa. Dec. 6, 2005) (two days).

Eighth Amendment.[8]  To a degree, these cases are more on point, given that McClure

alleged the mattress he received each night "wasn't really a mattress at that point," but,

rather, was a "like shell of a mattress."  However, these cases do not help the Defendants

as McClure's deprivation of a functional mattress did not last a few days; it lasted over

200 days.  We conclude that McClure adequately presented a claim that the mattress

restriction was "objectively, sufficiently serious, resulting in the denial of the minimal

civilized measure of life's necessities," based on the totality of the circumstances here—a

prisoner with pre-existing back problems being subjected, for a period in excess of 200

days, to the effective deprivation of a mattress at night, and the complete deprivation of a

mattress during the day, resulting in substantial pain in his lower back, sciatica, and

tingling and numbness in his legs.

However, the Defendants resurrect another argument on appeal—one the District

Court did not reach—which we must address.  The Defendants argue that "whatever

adversity was occasioned by the [mattress] restriction, [Defendants] cannot be held liable

for it, as [McClure] clearly brought it upon himself."  Essentially, the Defendants'

argument is that McClure initially found himself with a defective mattress through his

---

[8] See Stephens v. Cottey, 145 F. App'x 179 (7th Cir. 2005) (deprivation of mattress for three days where inmate slept on steel bed frame did not violate Eighth Amendment); Milhouse v. Gee, 2011 WL 3627414 (M.D. Pa. Aug. 17, 2011) ("short period" of days); Castro v. Chesney, 1998 WL 767467 (E.D. Pa. Nov. 3, 1998) (two days); Collins v. Klotz, 1994 WL 371479 (E.D. Pa. July 1, 1994) (holding that short delays in replacing beds and mattresses destroyed by an inmate did not constitute Eighth Amendment violations because prison officials could not be expected to "instantaneously" replace property he destroyed; one of the mattress was ripped open to hide weapons inside).

own doing, *i.e.*, ripping the stuffing out of his mattress, and that he prolonged his time with the defective mattress by committing infractions, such as often refusing to relinquish the mattress in the morning when officers tried to take it away from him and being verbally abusive to them as they took it. The Defendants also point to a litany of McClure's unrelated misconduct: flooding his cell once by flushing his toilet repeatedly, blocking his cell window once with a towel, impermissibly shaving his head twice, making a "throat-cutting" gesture to an officer, and attempting to strike an officer and throwing a newspaper at the officer. McClure was told by staff members that if he behaved himself, the mattress restriction would be lifted.

Thus, the Defendants' position, very literally, is that McClure made his own bed and then had to lie in it. More precisely put, the Defendants contend that, even assuming the mattress restriction otherwise would have constituted an Eighth Amendment violation, it did not here because McClure himself destroyed the mattress and engaged in related misconduct (refusing to relinquish the mattress come morning and verbally abusing officers for taking it), and unrelated misconduct of the various kinds described above. In the Defendants' view, there could be no constitutional foul because McClure, much like an individual found to be in civil contempt, held the keys to release from punishment in his own hands. All McClure had to do was to shape up, the Defendants assert, and he would have been given a functional mattress to use day and night.

10

In support of this position the Defendants rely upon a number of cases where inmates were deprived of basic needs such as food or exercise as a result of persistently disrespecting prison rules. However, in the cases upon which the Defendants rely, the inmates' rule violations made provision of the deprived needs difficult or dangerous. Indeed, most of the cases the Defendants rely upon involve prisoners refusing to comply with safety protocol required to receive meals.[9] These cases are clearly distinguishable. Most of McClure's misconduct was completely unrelated to the mattress restriction. Providing McClure with a functional mattress would not have placed correctional officers or other inmates at risk. As to the unrelated misconduct, the record reflects that McClure was regularly disciplined. He was placed in administrative segregation for periods of time, and was also required to wear handcuffs and shackles at various times whenever out of his cell. With regard to his misconduct that did relate to the mattress, McClure destroyed one mattress, not multiple, and claims to have done so for a specific reason—to crawl inside and stay warm when his requests for blankets went unanswered. We do not condone McClure's destruction of prison property, but using his destruction of one

---

[9] See Freeman v. Berge, 441 F.3d 543 (7th Cir. 2006) (in maximum security prison where inmates were served meals in their cells, the plaintiff was denied many meals over a two-year period because he refused to comply with requirement that, when meals were served, inmates stand in the middle of their cell, with the light on, wearing certain clothing); Rodriguez v. Briley, 403 F.3d 952 (7th Cir. 2005) (the plaintiff was denied between 300 and 350 meals over an 18-month period because he refused to place certain required belongings in a designated box in his cell before leaving to go to the cafeteria); Talib v. Gilley, 138 F.3d 211 (5th Cir. 1998) (the plaintiff was denied 50 meals over a five-month period when he refused to kneel with his hands behind his back as meals were being served in cells during lockdown periods as a result of gang-related violence).

11

mattress, under these circumstances, as grounds for depriving him of a functional mattress for an extended period of time was inappropriate under the Eighth Amendment. Cf. Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) ("There is a fundamental difference between depriving a prisoner of privileges he may enjoy and depriving him of the basic necessities of human existence. . . . The duration and conditions of [the deprivation] cannot be ignored in deciding whether [the deprivation] meets constitutional standards.") (citing Hutto v. Finney, 437 U.S. 678, 686-87 (1978)), superseded by statute on other grounds as stated in Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (3d Cir. 2000). Furthermore, the fact that McClure desperately tried to hold on to the only mattress he had, come daytime, to avoid more time lying directly on a concrete slab did not justify a continuing violation of his Eighth Amendment rights in these circumstances.

The Defendants also cite Pearson v. Ramos, 237 F.3d 881 (7th Cir. 2001), where the plaintiff was ultimately deprived of yard privileges for one year, dispensed in 90-day increments tied to four infractions: beating a guard to the point of hospitalization; setting a fire which produced so much smoke that some prisoners had to be evacuated; spitting in the face of a guard who tried to restrain him after he assaulted another guard; and throwing a bottle of bodily fluids in a medical technician's face. All of these infractions occurred outside the inmate's cell. Pearson too is distinguishable. The plaintiff in Pearson lost yard privileges because his misconduct demonstrated that letting him into the yard put prison officials and other inmates at risk. Here, the Defendants were not

12

neutralizing a known danger by depriving McClure of a functional mattress over the course of more than 200 days. Again, the dangers created by McClure's unrelated misconduct were addressed by placing him in administrative segregation. This case would be similar to a situation in which, instead of a mattress, the Defendants arbitrarily chose meals to withhold, told McClure he would receive an insufficient number of meals if he did not improve his wholly unrelated misconduct, and then used his displeasure over the deprivation of the meals to deprive him of still more meals.[10] In short, the Defendants have pointed to no legitimate penological reason for the mattress restriction, and we reject the Defendants' argument that McClure's actions justified the restriction.

Finally, the Defendants argue that they are entitled to qualified immunity because, even if there was an Eighth Amendment violation, the right at play was not clearly established. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658,

---

[10] The Defendants also contend that the mattress restriction was justified as a security measure because McClure had a history of using objects, such as mattress stuffing, to block the window on his cell door. However, the Defendants acknowledge that McClure denies ever doing so with the stuffing from the mattress in question. To combat this disputed issue of fact, the Defendants unimpressively assert that "it is obvious that the stuffing *could* be used for that purpose by an inmate with a propensity for doing so." (Appellees' Br. at 16) (emphasis added). We are unpersuaded by this justification for the long running mattress restriction as the Defendants have fallen well short of showing that this was a pervasive issue with McClure, let alone to a degree that would necessitate depriving him of a functional mattress for over 200 days.

13

664 (2012) (citation omitted). The contours of a clearly established right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001). Clearly established does not mean that "the very action in question has previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Indeed, "[t]o prevail against a claim of qualified immunity, the plaintiff need not produce 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Thomas v. Tice, 948 F.3d 133, 141 (3d Cir. 2020) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741, (2011)). "[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" Tolan v. Cotton, 572 U.S. 650, 656 (2014) (per curiam) (quoting Hope, 536 U.S. at 741). We conclude that, at the time the mattress restriction was in effect, it was clearly established that an inmate could not be effectively deprived a functional mattress for over 200 days, for no legitimate penological reason, particularly where the deprivation caused the exacerbation of his pre-existing back problems. See Mammana, 934 F.3d at 371-74;[11] cf. Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 757 (3d Cir. 1979).

For these reasons, we will vacate the judgment of the District Court and will remand for further proceedings.

---

[11] Although Mammana was decided after the events at issue, it broke no new ground and relied upon a considerable amount of well-established case law.

14